**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| HUNT CAPITAL PARTNERS, LLC<br>HCP PACIFIC ASSET MANAGEMENT, LLC<br><br>        Plaintiffs,<br><br>– vs. –<br><br>HAROLD R. BERK, and<br>HAROLD R. BERK, P.C.<br><br>        Defendants. | Civil Action No.: 14-2726<br><br>Section "___"<br>Judge<br><br>Mag. Div. (__)<br>Mag. Judge |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Hunt Capital Partners, LLC and HCP Pacific Asset Management, LLC (collectively "Hunt") which, in support of their Complaint aver as follows:

### Nature of The Action

1.      This is an action brought by Plaintiffs Hunt Capital Partners, LLC and HCP Pacific Asset Management, LLC (collectively "Hunt") against Defendant Harold R. Berk, a Pennsylvania attorney, and Defendant Harold R. Berk, P.C., a professional corporation (collectively, "Berk"), for defamation arising out of a series of false and defamatory statements accusing Hunt of engaging in criminal conduct and violating federal law. Berk published these false allegations online to Hunt's professional community on the ABA Forum on Affordable Housing and Community Development Law – and also in a barrage of unsolicited emails that Berk sent directly to Hunt's third-party lenders, auditors, accountants, attorneys, and other professionals with ties to Hunt and Hunt's Low-Income Housing Tax Credit ("LIHTC") business.

2.      In November 2014, almost immediately after he was retained by several Louisiana-based clients to advise and represent them in a business dispute with Hunt, Berk embarked on a sustained campaign to defame and disparage Hunt in the LIHTC community. Referring to Hunt as "scum" and promising to "make sure Hunt gets what it deserves," Berk defamed and disparaged Hunt by publishing false statements to the community that, by engaging in good-faith efforts to settle the business dispute, Hunt is "guilty" of "wire fraud, mail fraud, conspiracy to commit wire and mail fraud and extortion."   In other communications, Berk stated that Hunt has engaged in "outright attempted theft" by "attempting to purloin" the partnerships at issue in the dispute.   Berk published these statements, which are defamatory *per se*, broadly to Hunt's professional contacts knowing full well that they are false, and with the specific hope and intent of publicly shaming, embarrassing, and harassing Hunt into dropping its business dispute with his clients or settling with them on more favorable terms.  The statements were not made in connection with a good-faith negotiation of any disputes between his clients and Hunt.

3.      Hunt brings this defamation action to vindicate its rights and reputation under civil law.   As a result of Berk's defamatory statements and conduct, Hunt's reputation, goodwill, and business have been damaged.  Hunt has been further damaged in having to expend substantial resources to respond to the false statements, and in having its reputation for lawful business conduct and integrity unfairly impugned to professionals in the LIHTC business.  Because of these and other injuries sustained as a result of Berk's conduct, Hunt is entitled to compensatory, reputational, and presumed damages in an amount to be determined at trial.

## THE PARTIES AND OTHER RELEVANT PERSONS

4.      Plaintiffs are affiliates of Hunt Companies, Inc., a privately held diversified investment, real estate investment management, real estate development, design-build, construction management, and asset/property management holding company.  Plaintiff Hunt Capital Partners, LLC focuses on syndication and placement of low-income housing tax credit equity and proprietary debt product (both tax exempt and taxable) securitization and acts as the manager for all of the LIHTC funds under Hunt's management.  Plaintiff HCP Pacific Asset Management, LLC acts as the asset manager and performs asset management activities relating to the LIHTC funds under Hunt's management.  Plaintiffs are incorporated in the state of Delaware and have their principal places of business in Denver, Colorado.

5.      Defendant Harold R. Berk ("Harold R. Berk" or "Mr. Berk") is an attorney and a member of the Pennsylvania Bar.  In November 2014, Mr. Berk was retained to advise and represent the Louisiana-based general partners of five Louisiana limited partnerships, each of which owns and manages multi-family housing in Louisiana and is subject to written partnership agreements governed by Louisiana law.  In furtherance of that engagement, and with the support and encouragement of his Louisiana clients, Mr. Berk published the false and defamatory statements regarding Hunt that are the subject of this action.  Mr. Berk is a citizen and resident of the Commonwealth of Pennsylvania.

6.      Defendant Harold R. Berk, P.C. ("Defendant Harold R. Berk, P.C.," and collectively with Defendant Harold R. Berk, "Berk") is a professional corporation incorporated in the State of Pennsylvania.  Upon information and belief, Defendant Harold R. Berk does business, engages in the practice of law, and represents clients, including those identified below in Paragraph 7, through Defendant Harold R. Berk, P.C.  Upon information and belief, Defendant Harold R. Berk, P.C. has its principal place of business in Pennsylvania.

3

7.     Berk's Louisiana-based clients are the former partners and representatives of five limited partnerships known as Ames Gardens Estates Limited Partnership; Canary Homes, L.P.; Hnasko Affordable Homes, ALPIC; Robin Homes, L.P.; and Smith Square Development Limited Partnership (collectively, the "Partnerships") and the former management company of the Partnerships.  Each of the Partnerships was formed for the purpose of owning and operating affordable multi-family housing complexes located in Jefferson Parish and Tangipahoa Parish, Louisiana.  In November 2014, the general partners retained Berk to advise and represent them in a business dispute with Hunt regarding the management of the Partnerships and, in furtherance of that representation, Berk published the false and defamatory statements regarding Hunt that are the subject of this action.  Berk's clients are:

(a)     Warren Homes, LLC ("Warren Homes") is a Louisiana limited company.  All of Warren Homes's members are Louisiana citizens.  Warren Homes was the Fiscal Partner, which is a General Partner, of Ames Gardens Estates Limited Partnership ("Ames Gardens");

(b)     Victor Loraso, Jr. is a Louisiana citizen.  Mr. Loraso was the Managing General Partner of Ames Gardens.  Mr. Loraso is a guarantor of the obligations of Ames Gardens;

(c)     Rene C. Crescionie, Sr. is a Louisiana citizen.  Mr. Crescionie was the Co-General Partner of Ames Gardens.  Mr. Loraso is a guarantor of the obligations of Ames Gardens;

(d)     Canary Homes, LLC ("Canary Homes, LLC") is a Louisiana limited company.  All of Canary Homes, LLC's members are Louisiana citizens.  Canary Homes, LLC was the Fiscal Partner, which is a General Partner, of Canary Homes, L.P. ("Canary

Homes");

(e)     Hnasko Holding Company, Inc., ("Hnasko Holding") is a Louisiana corporation with its principal place of business in Louisiana.  Hnasko Holding was the Managing General Partner of Hnasko Affordable Homes, ALPIC ("Hnasko Homes");

(f)     Robin Homes, LLC ("Robin Homes, LLC") is a Louisiana limited liability company.  All of Robin Homes, LLC's members are Louisiana citizens. Robin Homes, LLC was the Fiscal Partner, which is a General Partner, of Robin Homes, LP ("Robin Homes");

(g)     Smith Square, LLC ("Smith Square, LLC") is a Louisiana citizen.  The sole member of Smith Square, LLC is a Louisiana citizen.  Smith Square, LLC was the Fiscal Partner, which is a General Partner, of Smith Square Development Limited Partnership ("Smith Square");

(h)     V. Ray Rose is a Louisiana citizen.  Mr. Rose is an officer or manager of Warren Homes; Canary Homes, LLC; Hnasko Holding; Robin Homes, LLC; and Smith Square, LLC (collectively, the "Rose Entities"), the Former General Partners of the Partnerships.  Mr. Rose is also a guarantor of the obligations of the Rose Entities;

(i)     Summit Apartment Management Company, Inc. ("Summit") is a Louisiana corporation with its principal place of business in Louisiana.  Summit was the Management Company for the Partnerships;

(j)     Michael R. Peralta is the President of Summit, the Former Management Company for the Partnerships.  At all times material hereto, Mr. Peralta is a Louisiana citizen.

## JURISDICTION

8.     This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.  Because the Plaintiffs are citizens of the states of Delaware and Colorado for purposes of diversity jurisdiction, and because the Defendants are citizens of the Commonwealth of Pennsylvania, complete diversity of citizenship exists pursuant to 28 U.S.C. §1332(a)(1).

9.     This Court has personal jurisdiction over Defendants under Section 13:3201 of the Louisiana Code, which extends jurisdiction to the fullest extent permissible under the Due Process Clause of the United States Constitution.  Berk, as legal counsel to the Partnerships, does business and provides legal services – and realizes pecuniary benefits from transacting business and supplying legal services – in Louisiana.  In addition, Berk has committed unlawful acts arising out of his legal representation of the Partnerships in Louisiana, and in making defamatory statements concerning a business venture in Louisiana, which is the focal point of Defendants' conduct.  Moreover, Berk knowingly directed his statements into Louisiana, the situs of Plaintiff's business interest with the Partnerships.  Hunt manages investments in many other affordable housing projects in Louisiana and has business relationships with the Louisiana Housing Corporation.  In addition, in the underlying proceeding between Berk's clients and the Hunt affiliates relating to the actions that gave rise to Berk's defamation, Berk appeared in this Court already to oppose relief sought against his clients, thereby submitting himself to the jurisdiction of this Court.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district.

6

## FACTUAL BACKGROUND

### The Underlying Business Dispute
### Between Hunt And Defendant's Clients

11.     The underlying business dispute between Hunt and Berk's clients relates to the management of five Louisiana limited partnerships, each of which owns and manages multi-family housing in Louisiana and is subject to written partnership agreements governed by Louisiana law.

12.     Hunt's position in the underlying business dispute is that it has the authority, acting on behalf of the investor limited partners, to remove the general partners of the five limited partnerships. Berk's clients, who are (or are closely affiliated with) the general partners of the five partnerships, disagree.

13.     On July 1, 2014, Hunt sent default notices to the general partners of the five partnerships, advising them of Hunt's intent to remove them pursuant to the relevant terms of the written limited partnership agreements.

14.     Thereafter, Hunt and the general partners of the five limited partnerships entered into settlement discussions.  On October 9, 2014, the general partners, who were then being represented by other counsel (not Berk) made a settlement offer to Hunt.  On October 30, 2014, Hunt made a counteroffer.

15.     On November 3, 2014, the general partners retained Berk as their new counsel to advise and represent them in their dispute with Hunt.

16.     On November 18, 2014, Hunt sent official removal notices to the general partners of the fie partnerships, advising them that they had been removed as the general partners of the partnerships.

**Berk Embarks On A Campaign
To Defame Hunt And Damage Hunt's Business**

17.     Beginning on November 4, 2014, nearly immediately after he was retained by the general partners, Berk embarked on a sustained, multi-week campaign, sponsored and encouraged by his clients, to defame and disparage Hunt and to interfere with Hunt's business and professional relationships.  Berk defamed and disparaged Hunt in statements published on the ABA Forum on Affordable Housing and Community Development Law (the "ABA Forum") – and also in a barrage of unsolicited emails sent directly by Berk to Hunt's third-party lenders, auditors, accountants, attorneys, and other professionals with ties to Hunt and Hunt's LIHTC business.

18.     As the focal point of his campaign, Berk published a series of false and defamatory statements that, by taking steps to remove his clients as the general partners of the Louisiana Partnerships and engaging in settlement discussions to resolve that dispute, Hunt was "guilty" of "wire fraud, mail fraud, conspiracy to commit wire and mail fraud and extortion" and had engaged in "outright attempted theft" by "attempting to purloin" the partnerships at issue in the dispute. Berk published these false and defamatory statements broadly to Hunt's professional contacts knowing that they are false, or at minimum recklessly disregarding facts demonstrating their falsity, and with the specific intent of shaming, embarrassing, and harassing Plaintiffs into dropping their business dispute with his clients or settling that business dispute with his clients on more favorable terms.

19.     On November 4, 2014, Berk sent an unsolicited email message to Shawn Whitney, a Missouri-based real estate attorney who had represented Hunt in matters unrelated to the underlying business dispute regarding the Partnerships.  (Ex. 1.)  In his November 4, 2014 email message to Mr. Whitney, Berk explained that he had just been retained on "another

8

Hunt shakedown matter" involving five properties in Louisiana. Berk described Hunt as "scum" and stated that Hunt's conduct "amount[s] to outright attempted theft." In an ominous reference to the defamation campaign he was about to launch more publicly, Berk ended his email message with a threat that he would "mak[e] sure that Hunt gets what it deserves."

20.     On November 4, 2014, Berk posted a series of messages regarding Hunt on the ABA Forum, an automatic mailing list server ("ListServ") maintained and moderated by the American Bar Association for attorneys and other professionals who are interested and involved in affordable housing and community development issues.[1]  (Ex. 2.)  In a series of posts entitled "Investors Attempting To Purloin Partnerships," Berk described the tactics used by certain "investors" to remove general partners from their positions.  Berk described the tactics used by those "investors" as "undermin[ing] the integrity and trust of the LIHTC community."

21.     Although Berk's November 4, 2014 ABA Forum posts did not mention Hunt specifically by name, his posts provide sufficient details about the underlying business disputes with Hunt so that subscribers to the ABA Forum – most of whom are well-connected professionals in the LIHTC industry – reasonably understood that Hunt was one of the "investors" that Berk was accusing of "[a]ttempting to [p]urloin [p]artnerships."  Indeed, in a November 5, 2014 follow-up post on the ABA Forum, also entitled "Investors Attempting to Purloin Partnerships," Berk specifically identified "Hunt" as one of the investors who had engaged in the tactics described in his earlier posts with the same title.  (Ex. 3.)

---

[1] When an email is addressed to a ListServ mailing list, it is automatically broadcast to everyone on the list.  The result is similar to an online newsgroup or forum, except that the messages are transmitted as email and are therefore available only to individuals on the list.  On information and belief, the ABA Forum consists of hundreds, if not thousands, of Hunt's peer institutions, customers and potential customers, business partners, competitors, attorneys, and other professionals involved in LIHTC issues.

22.     In a November 5, 2014 message that Berk posted on the ABA Forum also entitled "Investors Attempting to Purloin Partnerships," Berk confirmed that many Forum members took notice of his November 4 message on the same subject, writing that he "ha[s] received a significant number of private responses" to that message.  (Ex. 4.)

23.     On November 5, 2014, Berk forwarded several of his "Investors Attempting to Purloin Partnership" ABA Forum posts to Shawn Whitney — and several other outside attorneys who represent Hunt on matters unrelated to the underlying business dispute.  (Ex. 5.) Once again, Berk concluded his email message to Mr. Whitney with a threatening reference to his defamation: "Mr. Whitney:  This is your Hunt baby.  Make sure you advise the Hunt folks that the storm waters are growing for them."

24.     On November 13, 2014, Berk posted another message on the ABA Forum under the title "Claims Against Predatory Investors and Acquirers of Distressed Syndicator Assets." (Ex. 6.)  In that post, Berk described "a current matter in which [he] became engaged 10 days ago" involving the efforts of a "Vulture Syndicator" to oust the general partners in "five LIHTC partnerships."  Berk stated that, in the course of these efforts, the "Vulture Syndicator" and its counsel "committed wire fraud, mail fraud and conspiracy to commit mail fraud and wire fraud" by "demand[ing] substantial payments on threat of removal of [the general partners]" even though, "in reality, the [Vulture Syndicator] does not have authority to remove [general partners]."

25.     Although Berk's November 13, 2014 ABA Forum posts did not mention Hunt specifically by name, those posts provide sufficient details about the "Vulture Syndicator" — and the specific manner in which the "Vulture Syndicator" had acquired its partnership interests from a "Bankrupt Syndicator" — so that subscribers to the ABA Forum (most of

whom are well-connected professionals in the LIHTC industry) reasonably understood that Berk was describing Hunt as the "Vulture Syndicator" that had "committed wire fraud, mail fraud and conspiracy to commit mail fraud and wire fraud."[2]

26.     On November 17, 2014, Berk sent an unsolicited email message to Jere Thompson, a Philadelphia-based attorney who had previously represented Hunt in the purchase of the partnership interests from the "Bankrupt Syndicator," republishing his false allegations of criminal conduct. (Ex. 8.)  Attaching his prior ABA Forum post accusing Hunt of engaging "wire fraud, mail fraud and conspiracy to commit mail fraud and wire fraud," Berk wrote to Mr. Thompson: "I thought you might be interested in . . . postings I have made on the ABA Forum ListServe [sic] concerning a matter I am currently handling concerning five LIHTC limited partnerships in New Orleans and the efforts of your client, Hunt, to extract substantial sums from my client" by threatening to remove them as general partners.  Berk further stated that Hunt's representative "has gone far, far over the edge" in "committing . . . mail and wire fraud" by making those claims.

27.     On November 20, 2014, Berk sent an unsolicited email message to senior executives at Enterprise Community ("Enterprise"), a prominent and influential lender in the LIHTC community – and the lender of the give Louisiana partnerships at issue. (Ex. 9.)  In his email message to Enterprise, Berk once again falsely accused Hunt of criminal conduct – and violating federal law – by stating that Hunt is "guilty" of "wire fraud, mail fraud, conspiracy to commit wire and mail fraud and extortion."

---

[2] Berk confirmed the true meaning of his "Vulture Syndicator" reference in subsequent emails sent directly to certain influential participants in the ABA Forum.  For example, in a November 21, 2014 email sent directly to several prominent attorneys and accountants involved in the LIHTC business, Berk wrote: "Hunt is of course the Vulture Syndicator on my two ABA postings . . . ."  (Ex. 7.)

28.     That same day, Berk published the same defamatory falsehoods to Hunt's auditor. Berk forwarded a copy of his November 20, 2014 email message to Enterprise — including the false allegation that Hunt is "guilty" of "wire fraud, mail fraud, conspiracy to commit wire and mail fraud and extortion" — to a partner at Novogradac & Company LLP ("Novogradac"), the certified public accounting firm that audits many of Hunt's tax credit funds and properties.  (Ex. 10.)  In forwarding these false and defamatory statements to Novogradac, Berk once again emphasized the allegations that Hunt had engaged in fraudulent and criminal conduct, stating that "[a]ccountants and lawyers need to know bad things their clients are doing" and advising Novogradac to take steps not to "end up like Enron's auditors" as a result of Hunt's criminal and fraudulent misconduct.

## Berk's Statements Are False And Defamatory *Per Se*

29.     Berk's statements are false in that Plaintiffs' efforts to remove Berk's clients as the general partners of the Partnerships, and Plaintiffs' subsequent efforts to settle the underlying business dispute, are a lawful and good-faith exercise of Plaintiffs' legal rights and do not constitute criminal conduct or amount to a violation of federal law.

30.     Berk's statements are false for the additional reason that Plaintiffs are not "guilty" — and have not been found to be "guilty" — of any crime or criminal conduct arising from Plaintiffs' efforts to remove Berk's clients as the general partners of the Partnerships or Plaintiffs' subsequent efforts to settle the underlying business dispute.

31.     Berk's statements are defamatory *per se* because his statements falsely impute criminal conduct to Plaintiffs and falsely accuse Plaintiffs of committing specific crimes.

32.     Berk's statements on the ABA Forum are defamatory *per se* because his statements would tend to harm, and indeed have harmed, the Plaintiffs in their trade, business, and profession.

**Berk Recklessly Disregarded The Truth By Deliberately
Ignoring Documents, Information, And Written Warnings
Rebutting His False Allegations Of Criminal Conduct**

33.     In publishing his false and defamatory statements accusing Hunt of criminal conduct, Berk acted recklessly and with actual malice. Berk either knew or should have known that his statements were false, or he acted in reckless disregard of the truth or falsity of those statements, by ignoring information, documentation, and written warnings rebutting his false allegations of criminal conduct.  Berk also acted with common law malice toward Hunt, as evidenced by his statements referring to Hunt as "scum" and promising to "make sure Hunt gets what it deserves," and by the fact that he made many similarly threatening and unprofessional statements to additional third parties through additional unsolicited communications.

34.     Upon information and belief, prior to publication of the defamatory statements, Berk reviewed — but deliberately ignored — documents that directly refute his false allegations of criminal conduct.  Specifically, as confirmed by a November 9, 2014 email from Berk to Plaintiffs' counsel (Ex. 11), Berk had in his possession copies of the purchase and sale agreement, including all exhibits, whereby Capmark sold substantially all of its LIHTC assets to Hunt, together with the bankruptcy order approving the sale.  The purchase and sale agreement is clear that Hunt purchased all of the rights to manage the LIHTC business previously managed by Capmark, thus demonstrating the falsity of Berk's subsequent statements asserting that Hunt only bought the special limited partnership interests and fundamentally refuting the false allegations of criminal conduct and professional malpractice in Berk's ABA Forum posts and email communications by showing that Hunt and its affiliates have the authority to take all action that has been taken to date.

35.     Indeed, Berk conceded in a November 14, 2014 email to Plaintiffs' counsel that he was "involved in the Capmark bankruptcy" and "ha[s] copies . . . of all of the relevant documents including the bankruptcy court orders and the agreement of sale of the tax credit assets," including "schedules identifying what 'tax credit assets' were acquired by Hunt from the Capmark bankruptcy estate."  (Ex. 12.)

36.     Moreover, over and above Berk's possession of documents specifically refuting his false and defamatory statements detailed above, and further demonstrating Berk's knowledge of the falsity of those statements – or, at least, his reckless disregard of the truth or falsity of those statements – on November 9, 2014, Plaintiffs, through their internal counsel, responded to Berk's question about assignments of the investor limited partner's interests, explaining that Hunt took an assignment of the management interests in the investment limited partners, but Berk recklessly disregarded this information.

37.     On November 14, 2014, Hunt, through its outside counsel, sent a letter to Berk placing him on formal written notice that the statements he had published about Hunt and its business operations on the ABA Forum were "completely and utterly false."  Berk recklessly ignored Hunt's written notice and warning and, instead, continued to publish defamatory statements accusing Hunt of criminal conduct on the ABA Forum — and directly to Hunt's professional contacts — as alleged above.

38.     On November 18, 2014, Hunt, through its outside counsel, sent a second letter to Berk providing additional information about the management interests that Hunt had purchased in the investor limited partners of the Partnerships — and Hunt's broad authority to act as the manager on behalf of the investor limited partners in those Partnerships.  Despite being armed with the knowledge that Hunt is acting in its capacity as the manager of the

14

investor limited partners, Berk continued to request unnecessary and confidential asset management agreements and continued to assert that Hunt had only purchased worthless special limited partner interests.   Berk recklessly disregarded the additional information provided in the November 18, 2014 letter and, instead, continued to publish defamatory statements accusing Hunt of criminal conduct as alleged above.

39.   On November 21, 2014, after the forum moderators were made aware of Berk's false and defamatory allegations of criminal conduct, the ABA Forum suspended Berk's privileges to post on the forum without moderation — and informed Berk that his posting privileges were suspended.   Despite this knowledge, and undeterred by the responsible action of the ABA Forum in limiting his ability to post defamatory falsehoods, Berk continued to publish the same false and defamatory statements directly to Hunt's business contacts and other members of the LIHTC community by email and other direct communications.

40.   On November 24, 2014, Hunt, through counsel, demanded that Berk retract his false statements accusing Hunt of criminal conduct and violating federal law.   In a letter to Berk, counsel for Hunt specifically informed Berk that his false allegations that Hunt is "guilty" of "wire fraud, mail fraud, conspiracy to commit wire and mail fraud and extortion" — and the other false allegations of criminal conduct that are the subject of this action — are false and defamatory.   The letter also specifically informed Berk that these statements damage Hunt's reputation in the LIHTC community.

41.   To remedy this harm, counsel for Hunt requested that Berk remove his false statements from all online locations within his direct control, take steps to request that those false statements be removed from other online locations, and issue a written retraction of his statements.

42.     Berk, however, refused to retract his defamatory statements regarding Hunt.  To the contrary, Berk has defiantly doubled down on his defamatory allegations that Hunt has engaged in criminal conduct.

## COUNT I:  DEFAMATION
### (ABA Forum Posts)

43.     Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

44.     Berk published statements on the ABA Forum that were reasonably understood by those who read them to be statements of fact regarding Plaintiffs.

45.     Berk's statements on the ABA Forum defamed and disparaged Plaintiffs by falsely stating that Plaintiffs have engaged in criminal conduct and have committed specific crimes, including theft, wire fraud, mail fraud, conspiracy, and violations of federal law.

46.     Specifically, Berk published the following false and defamatory statements regarding Plaintiffs on the ABA Forum:

(a)     Plaintiffs are "attempting to purloin partnerships" (November 4, 2014 ABA Forum Post)

(b)     Plaintiffs have "committed wire fraud, mail fraud, and conspiracy to commit mail and wire fraud."  (November 13, 2014 ABA Forum Post)

47.     Berk's defamatory statements posted on the ABA Forum are of and concerning Plaintiffs:

(a)     Berk's November 4, 2014 ABA Forum Post provides sufficient details about the "investors" that are the subject of his defamatory statements such that subscribers to the ABA Forum, who are knowledgable and well-connected professionals in the LIHTC industry, would have readily understood that Plaintiffs were among the

16

"investors" that Berk was accusing of "attempting to purloin partnerships." Indeed, in a November 5, 2014 follow-up post on the ABA Forum, also entitled "Investors Attempting to Purloin Partnerships," Berk specifically identified Hunt as one of the investors who had engaged in the tactics described in his earlier posts with the same title.

(b)      Berk's Novemebr 13, 2014 ABA Forum provides sufficient details about the "Vulture Syndicator" that is the subject of his defamatory statements such that subscribers to the ABA Forum reasonably understood that those statements were of and concerning Plaintiffs. The details posted by Berk include specific information about specific manner in which the "Vulture Syndicator" had acquired the partnership interests at issue from a "Bankrupt Syndicator" in a Section 363 bankruptcy proceeding. Subscribers to the ABA Forum, who are knowledgable and well-connected professionals in the LIHTC industry, would have readily understood the information posted by Berk to refer to Plaintiffs' acquisition of the partnership interests from the Capmark bankruptcy estate, a well-known and highly publicized event in the LIHTC community. As such, subscribers to the ABA Forum reasonably understood that Plaintiffs were the "Vulture Syndicator" that Defendant Burk was accusing of having "committed wire fraud, mail fraud and conspiracy to commit mail fraud and wire fraud."

(c)      In a November 21, 2014 email, Berk informed several prominent attorneys and accountants involved in the LIHTC community that "Hunt is of course the Vulture Syndicator on [Berk's] two ABA postings." Thus, these attorneys and accountants reasonably understood that Plaintiffs were the "Vulture Syndicator" that Defendant Burk was accusing of having "committed wire fraud, mail fraud and conspiracy to commit mail fraud and wire fraud."

48.     Berk's statements published on the ABA Forum are defamatory *per se* because his statements falsely impute criminal conduct to Plaintiffs and falsely accuse Plaintiffs of committing crimes.

49.     Berk's statements published on the ABA Forum are defamatory *per s*e because his statements would tend to harm, and indeed have harmed, the Plaintiffs in their trade, business, and profession.

50.     Berk's statements published on the ABA Forum are false in that Plaintiffs' efforts to remove Berk's clients as the general partners of the Partnerships, and Plaintiffs' subsequent efforts to settle the underlying business dispute, are a lawful and good-faith exercise of Plaintiffs' legal rights and do not constitute criminal conduct or amount to a violation of federal law.

51.     Berk published his false and defamatory statements on the ABA Forum — a widely read online community that includes Plaintiffs' peer institutions, customers, potential customers, business partners, competitors, attorneys, and others professionals involved in the LIHTC industry — in a manner designed to achieve widespread dissemination and exposure to Plaintiffs' professional contacts and others in the LIHTC community, including to individuals in Louisiana.

52.     Berk published his false and defamatory statements on the ABA Forum in reckless disregard of relevant agreements, documents, court pleadings, and court orders that were in his possession, or were known by Berk to exist and readily available to him in public court files, prior to his publication of the false statements.   The documents recklessly disregarded by Berk establish that Plaintiffs' efforts to remove Berk's clients as the general partners of the Partnerships, and Plaintiffs' subsequent efforts to settle the underlying business

18

dispute, are a lawful and good-faith exercise of Plaintiffs' legal rights. Considering his possession of — and access to — these documents, Berk entertained serious doubts as to the truth of these statements or had a high degree of awareness of their probable falsity.  Thus, Berk acted with actual malice, either because he knew his statements were false prior to publication or because he published the statements in reckless disregard for their truth or falsity.

53.     Berk acted with actual malice in that he published false and defamatory statements on the ABA Forum after receiving written warnings from Plaintiffs that his statements were false.  As a result of these written warnings, Berk entertained serious doubts as to the truth of his statements or had a high degree of awareness of their probably falsity.  Berk recklessly disregarded the written warnings he received from Plaintiffs that his statements are false.

54.     Berk's reckless disregard for the truth of his statements is further demonstrated by the fact that he failed and refused to correct and retract his statements after Plaintiffs informed them of the falsity of those statements.

55.     Berk published his false and defamatory statements on the ABA Forum with common law malice toward Plaintiffs and with the specific intent to cause damage to Plaintiffs.  Berk's malice and intent are evident from, among other things, his email communications describing Plaintiffs as "scum," his written threats to "mak[e] sure that Hunt gets what it deserves," and his similarly threatening and unprofessional statements to additional third parties via additional unsolicited communications.

56.     Berk published his false and defamatory statements on the ABA Forum with the specific intent of the specific intent of shaming, embarrassing, and harassing Plaintiffs into

19

dropping their business dispute with his clients or settling that business dispute with his clients on more favorable terms.

57.     As a result of the false and defamatory statements published by Berk on the ABA Forum, Plaintiffs' reputations have been impugned.

58.     As a result of the false and defamatory statements published by Berk on the ABA Forum, Plaintiffs' relationships with current and potential customers, lenders, attorneys, accountants, auditors, and business partners have been undermined and adversely affected.

59.     As a result of the false and defamatory statements published by Berk on the ABA Forum, confidence in Plaintiffs' business has been undermined.

60.     As a result of the false and defamatory statements published by Berk on the ABA Forum, Plaintiffs have been forced to make an expenditure of money to remedy the defamation.

61.     As a result of the false and defamatory statements published by Berk on the ABA Forum, Plaintiffs' investments in marketing, branding, and advertising have been undermined and adversely affected.

62.     In view of the foregoing, Plaintiffs are entitled to actual, presumed, and other damages in an amount to be specifically determined at trial.

## COUNT II:  DEFAMATION
### (Email Communications)

63.     Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

64.     Berk published statements directly to Plaintiffs' third-party lenders, auditors, accountants, attorneys, and other professionals with ties to Plaintiffs and the LIHTC business

that were reasonably understood by those who read them to be statements of fact regarding Plaintiffs.

65.     Berk's statements to Plaintiffs' professional contacts defamed and disparaged Plaintiffs by falsely stating that Plaintiffs have engaged in criminal conduct and have committed specific crimes, including theft, wire fraud, mail fraud, conspiracy, and violations of federal law.

66.     Specifically, Berk published the following false and defamatory statements to Plaintiffs' professional contacts:

(a)     Plaintiffs conduct "amount[s] to outright attempted theft."  (November 4, 2014 email to S. Whitney);

(d)     Plaintiffs have "committed wire fraud, mail fraud, and conspiracy to commit mail and wire fraud."  (November 17, 2014 email to J. Thompson (attaching November 13, 2014 ABA Forum Post));

(b)     Plaintiffs' representatives have "gone far, far over the edge" in "committing . . . mail and wire fraud."  (November 17, 2014 email to J. Thompson);

(c)     Plaintiffs are "guilty" of "wire fraud, mail fraud, conspiracy to commit wire and mail fraud and extortion."  (November 20, 2014 email to Enterprise); and

(d)     Plaintiffs are "guilty" of "wire fraud, mail fraud, conspiracy to commit wire and mail fraud and extortion."  (November 20, 2014 email to Novogradac.)

67.     Berk's defamatory statements to Plaintiffs' professional contacts are of and concerning Plaintiffs.

68.     Berk's statements published to Plaintiffs' professional contacts are defamatory *per se* because his statements falsely impute criminal conduct to Plaintiffs and falsely accuse Plaintiffs of committing specific crimes.

69.     Berk's statements published to Plaintiffs' professional contacts are defamatory *per se* because his statements would tend to harm, and indeed have harmed, the Plaintiffs in their trade, business, and profession.

70.     Berk's statements published to Plaintiffs' professional contacts are false in that Plaintiffs' efforts to remove Berk's clients as the general partners of the Partnerships, and Plaintiffs' subsequent efforts to settle the underlying business dispute, are a lawful and good-faith exercise of Plaintiffs' legal rights and do not constitute criminal conduct or amount to a violation of federal law.

71.     Berk's statements published to Plaintiffs' professional contacts are false in that Plaintiffs are not "guilty" — and have not been found to be "guilty" — of any crime or criminal conduct arising from Plaintiffs' efforts to remove Berk's clients as the general partners of the Partnerships or Plaintiffs' subsequent efforts to settle the underlying business dispute.

72.     Berk published his false and defamatory statements by email directly to Hunt's third-party lenders, auditors, accountants, attorneys, and other professionals with ties to Plaintiffs and Plaintiffs' LIHTC business in a manner designed to achieve widespread dissemination and exposure to Plaintiffs' professional contacts and others in the LIHTC community, including to individuals in Louisiana.

73.     Berk published his false and defamatory statements to Plaintiffs' professional contacts in reckless disregard of relevant agreements, documents, court pleadings, and court

orders that were in his possession, or were known by Berk to exist and readily available to him in public court files, prior to his publication of the false statements.  The documents recklessly disregarded by Berk establish that Plaintiffs' efforts to remove Berk's clients as the general partners of the Partnerships, and Plaintiffs' subsequent efforts to settle the underlying business dispute, are a lawful and good-faith exercise of Plaintiffs' legal rights.  Considering his possession of — and access to — these documents, Berk entertained serious doubts as to the truth of these statements or had a high degree of awareness of their probable falsity.  Thus, Berk acted with actual malice, either because he knew his statements were false prior to publication or because he published the statements in reckless disregard for their truth or falsity.

74.     Berk acted with actual malice in that he published false and defamatory statements to Plaintiffs' professional contacts after receiving written warnings from Plaintiffs that his statements were false.  As a result of these written warnings, Berk entertained serious doubts as to the truth of his statements or had a high degree of awareness of their probably falsity.  Berk reckless disregarded the written warnings he received from Plaintiffs that his statements are false.

75.     Berk's reckless disregard for the truth of his statements is further demonstrated by the fact that he failed and refused to correct and retract his statements after Plaintiffs informed them of their falsity.

76.     Berk published his false and defamatory statements to Plaintiffs' professional contacts with common law malice toward Plaintiffs and with the specific intent to cause damage to Plaintiffs.  Berk's malice and intent are evident from, among other things, his email communications describing Plaintiffs as "scum," his written threats to "mak[e] sure that Hunt

gets what it deserves," and his similarly threatening and unprofessional statements to additional third parties via additional unsolicited communications.

77.    Berk published his false and defamatory statements to Plaintiffs' professional contacts with the specific intent of the specific intent of shaming, embarrassing, and harassing Plaintiffs into dropping their business dispute with his clients or settling that business dispute with his clients on more favorable terms.

78.    Berk's reckless disregard for the truth of his statements is further demonstrated by the fact that he continued publish false and defamatory to Plaintiffs' professional contacts — even after the moderators of the ABA Forum suspended his privileges to post on the forum without moderation as a result of his posts about Plaintiffs.

79.    As a result of the false and defamatory statements published by Berk to Plaintiffs' professional contacts, Plaintiffs' reputations have been impugned.

80.    As a result of the false and defamatory statements published by Berk to Plaintiffs' professional contacts, Plaintiffs' relationships with current and potential customers, lenders, attorneys, accountants, auditors, and business partners have been undermined and adversely affected.

81.    As a result of the false and defamatory statements published by Berk to Plaintiffs' professional contacts, confidence in Plaintiffs' business has been undermined.

82.    As a result of the false and defamatory statements published by Berk to Plaintiffs' professional contacts, Plaintiffs have been forced to make an expenditure of money to remedy the defamation.

83.     As a result of the false and defamatory statements published by Berk to Plaintiffs' professional contacts, Plaintiffs' investments in marketing, branding, and advertising have been undermined and adversely affected.

84.     In view of the foregoing, Plaintiffs are entitled to actual, presumed, and other damages in an amount to be specifically determined at trial.

### PRAYER FOR RELIEF

85.     Wherefore, Plaintiffs requests this Court to award the following relief:

(a)     Compensatory and consequential damages for all losses sustained by Plaintiffs, including without limitation damages to Plaintiffs' reputation, goodwill, and business, mitigation costs, and other losses in an amount to be determined at trial;

(b)     Costs and fees incurred in the prosecution of this action; and

(c)     Further relief as this Court shall deem just and proper.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

By:     /s/ Steven F. Griffith, Jr.
        STEVEN F. GRIFFITH, JR., T.A. (27232)
        ERIN E. PELLETERI (30666)
        MATTHEW C. JUNEAU (33210)
        201 St. Charles Avenue, Suite 3600
        New Orleans, Louisiana 70170
        Telephone: (504) 566-5200
        Facsimile: (504) 636-4000

**CLARE LOCKE LLP**

By:    <u>/s/ Thomas A. Clare</u>
        THOMAS A. CLARE (pro hac application pending)
        ELIZABETH M. LOCKE (pro hac application pending)
        902 Prince Street
        Alexandria, VA 22314
        Telephone: (202) 628-7400

**ATTORNEYS FOR ALL PLAINTIFFS**
**HUNT CAPITAL PARTNERS, LLC**
**HCP PACIFIC ASSET MANAGEMENT, LLC**