Exhibit 1

**From:** Harold Berk [mailto:haroldberk@gmail.com]
**Sent:** Tuesday, November 04, 2014 3:20 PM
**To:** Whitney, Shawn
**Subject:** Re: Send me an email DO Not call me

Counsel for may GPs are now trading notes, so Hunt and its kindred spirits in the investor shakedown community should be in for some heavy sailing. How nice.

Are you a member of the ABA Forum on Affordable Housing? I assume that is not your kind of crowd.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 4:56 PM, Harold Berk <haroldberk@gmail.com> wrote:
You better get your client to clean up their at since they are in store for a lot of litigation from what I have seen so far from the private replies I have received. People on the ABA Forum know me well.. I have done LIHTC, HTC deals since 1988. Make sure Alison and Michelle have their malpractice policies paid up.(Oh I forgot you claimed they are not practicing law when they work at Hunt as General Counsel and Assistant General Counsel, and if  you so advised them, I hope your malpractice policy is paid-up since the Colorado bar begs to differ.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 4:46 PM, Harold Berk <haroldberk@gmail.com> wrote:
Different counsel for Hunt in New Orleans re five properties amounting to outright attempted theft. we'll make sure Hunt gets what it deserves.

I have five firms in Denver ready to sue Hunt.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 4:43 PM, Harold Berk <haroldberk@gmail.com> wrote:
By the way don't Michelle and Alison receive ABA Forum on Affordable Housing postings anyway? They should or do they just ignore the law.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 4:42 PM, Harold Berk <haroldberk@gmail.com> wrote:
Many people are replying to me privately and Hunt is the worst actor so far.

I was engaged on another Hunt shakedown matter yesterday in New Orleans on five properties.
They are scum.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

**P** *: Please consider the environment before printing this e-mail*

This e-mail, including all information contained therein and any attachments, is intended solely for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not an intended recipient, or an agent responsible for delivering it to an intended recipient, you have received this email in error. In such event, please immediately (i) notify the sender by reply email, (ii) do not review, copy, save, forward or print this email or any of its attachments, and (iii) delete and/or destroy this email and its attachments and all copies thereof. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, any e-mail sent in error, including all information contained therein and any attachments, by persons or entities other than the intended recipient is prohibited. Please visit our website at www.huntcompanies.com for important information about our privacy policies. For your protection, please do not transmit account information or instructions by e-mail or include account numbers, Social Security numbers, credit card numbers, passwords or other personal information.

Exhibit 2

From: **Harold Berk** haroldberk@GMAIL.COM
Subject: Re: Investors Attempting to Purloin Partnerships
Date: November 4, 2014 at 4:14 PM
To: HOMEFORUM@MAIL.AMERICANBAR.ORG

I should add that one large investor has inserted cross-default provisions in each of its partnership agreements with the same GP, and then they argue that any default in one leads to default on all by virtue of the cross-default. Of course shame on Partnership GP counsel for agreeing to such a provision. In one case the GP has 12 partnerships with the investor, and the investor has claimed default on all 12 by virtue of the cross-default.

I am preparing a Demand for Arbitration with the AAA on that one claiming that the ILP violated and breached the terms of the partnership agreement  by removing the GP without the partnership agreement notice and cure provisions being utilized and entitling the GP to damages both compensatory and punitive.   Just sent a letter (actually 12) saying goodbye and turn over all records; its all ours now.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 2:39 PM, Harold Berk <haroldberk@gmail.com> wrote:
A new trend seems to have taken place which could undermine the LIHTC investment world and needs to be stopped.
I have been retained by several different general partners where their investor in LIHTC partnerships have issued default letters and in some cases removed the general partner or converted the general partner's interest to a much reduced special limited partner, or both. Many of these cases are being done where significant deferred development fees are owed to the general partner and/or developer. This is surely permissible with real, material breaches by the GP, but in some of the cases I have seen, very insignificant issues have been raised by the investor or SLP to justify removal of the GP.

In one case there was  disparity between required security deposits and actual deposits of $5.00, but this was asserted to be a default justifying removal. In other cases,  a certain payment of perhaps $5,000.00 is referenced and the investor says as to the specific payment it should have been made by the GP and not the Partnership. In another case there was a $2,500.00 payment that was erroneously paid to the developer as deferred developer fees outside the terms of the waterfall, and though the GP-developer  restored the funds, the investor nevertheless declared a default and removed the GP.

In one situation, thought  there was a notice and cure provision, an incorrect payment five years ago was noted, and though repaid, the investor said you cannot cure because the improper payment was made so long ago. It claimed this was a waiver of notice and right to cure.

The investors in these situations are seeking to take total control of the partnership assets on very immaterial grounds particularly when the result is the deprivation of the developer's hard earned but unpaid deferred developer fee.

I have not seen such investor behavior up until now, but in conversations with other counsel it seems to be a trend, but a very bad one as it undermines the integrity and trust of the LIHTC community.

Those of you who represent investors should be vigilant in urging your investor clients not to initiate insubstantial removal actions.

Those representing developers and GPs  may need to consult with litigation counsel as to potential remedies. I am doing so on several matters where litigation seems inevitable.

Unfortunately, I have to suggest that at the next ABA Forum meeting in May, 2015 perhaps we need a session or two on litigation and arbitration of claims on investor-GP-developer controversies.

If anyone has a client with such a GP removal problem, I would appreciate hearing from you privately as I have several matters for different clients and am contemplating and evaluating various options.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

Thank you for your continued interest in this list. A summary of your discussion list subscriptions, including HOMEFORUM, can be found at http://apps.americanbar.org/elistserv/home.cfm . This new List Subscription Page allows you to manage your lists - unsubscribe from existing or join others.

If you have any issues you may either contact the list owner via email: HOMEFORUM-request@mail.americanbar.org , or the ABA Service Center at phone: 1-800-285-2221 or email: service@americanbar.org .

Exhibit 3

From: **Harold Berk** haroldberk@GMAIL.COM
Subject: Re: Investors Attempting to Purloin Partnerships
Date: November 5, 2014 at 8:37 AM
To: HOMEFORUM@MAIL.AMERICANBAR.ORG

These are factual statements:

Hunt inserts Section 7.1(x) in their partnership agreements providing cross-defaults.
Sun America AIG inserts Section 8.1(x) in their partnership agreements providing cross-defaults.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Wed, Nov 5, 2014 at 3:31 AM, Harold Berk <haroldberk@gmail.com> wrote:
    I have received a significant number of private responses detailing various investors and problems of the type I described. So my view that
    there is a real trend here is quite true.

    One person raised an interesting issue concerning the 12 partnership cross-default provisions I described.  If each partnership is composed
    of an investor LP that is a fund or even a private direct investment through a syndicator, isn't there a significant fiduciary relationship
    question raised if the GP is removed from partnerships due to the cross default provision even though the GP committed no breach in a
    specific partnership.  In other words, one investor group is held hostage to what happens in another partnership with different investors.

    There are many, many more questions in such proceedings as well as malpractice questions for the GP counsel that approved the cross-
    default provisions. And what about those investor counsel who inserted this cross default provision in 12 separate partnership agreements?

    Sorry for the early morning email, but I have a flight boarding at 5:45 a.m. to fly to Little Rock, AR for a hearing today on the termination of a
    LIHTC reservation based on reasons having nothing to do with the new project and resulting from GP removal notices by the investor LP in
    several other partnerships  which the GP contests and were provided by the investor to the tax credit allocating agency.  Any issues there
    lawyer colleagues?

    Harold R. Berk, Esquire
    1041 Glendevon Drive
    Ambler, PA 19002-1855
    215-646-3434
    215-219-0547  mobile
    haroldberk@gmail.com
    http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 4:03 PM, Harold Berk <haroldberk@gmail.com> wrote:
    I should add that one large investor has inserted cross-default provisions in each of its partnership agreements with the same GP, and
    then they argue that any default in one leads to default on all by virtue of the cross-default. Of course shame on Partnership GP counsel
    for agreeing to such a provision. In one case the GP has 12 partnerships with the investor, and the investor has claimed default on all 12
    by virtue of the cross-default.

    I am preparing a Demand for Arbitration with the AAA on that one claiming that the ILP violated and breached the terms of the partnership
    agreement  by removing the GP without the partnership agreement notice and cure provisions being utilized and entitling the GP to
    damages both compensatory and punitive.   Just sent a letter (actually 12) saying goodbye and turn over all records; its all ours now.

    Harold R. Berk, Esquire
    1041 Glendevon Drive
    Ambler, PA 19002-1855
    215-646-3434
    215-219-0547  mobile
    haroldberk@gmail.com
    http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 2:39 PM, Harold Berk <haroldberk@gmail.com> wrote:
    A new trend seems to have taken place which could undermine the LIHTC investment world and needs to be stopped.
    I have been retained by several different general partners where their investor in LIHTC partnerships have issued default letters and in
    some cases removed the general partner or converted the general partner's interest to a much reduced special limited partner, or both.
    Many of these cases are being done where significant deferred development fees are owed to the general partner and/or developer.
    This is surely permissible with real, material breaches by the GP, but in some of the cases I have seen, very insignificant issues have
    been raised by the investor or SLP to justify removal of the GP.

    In one case there was  disparity between required security deposits and actual deposits of $5.00, but this was asserted to be a default

justifying removal. In other cases,  a certain payment of perhaps $5,000.00 is referenced and the investor says as to the specific payment it should have been made by the GP and not the Partnership. In another case there was a $2,500.00 payment that was erroneously paid to the developer as deferred developer fees outside the terms of the waterfall, and though the GP-developer  restored the funds, the investor nevertheless declared a default and removed the GP.

In one situation, thought  there was a notice and cure provision, an incorrect payment five years ago was noted, and though repaid, the investor said you cannot cure because the improper payment was made so long ago. It claimed this was a waiver of notice and right to cure.

The investors in these situations are seeking to take total control of the partnership assets on very immaterial grounds particularly when the result is the deprivation of the developer's hard earned but unpaid deferred developer fee.

I have not seen such investor behavior up until now, but in conversations with other counsel it seems to be a trend, but a very bad one as it undermines the integrity and trust of the LIHTC community.

Those of you who represent investors should be vigilant in urging your investor clients not to initiate insubstantial removal actions.

Those representing developers and GPs  may need to consult with litigation counsel as to potential remedies. I am doing so on several matters where litigation seems inevitable.

Unfortunately, I have to suggest that at the next ABA Forum meeting in May, 2015 perhaps we need a session or two on litigation and arbitration of claims on investor-GP-developer controversies.

If anyone has a client with such a GP removal problem, I would appreciate hearing from you privately as I have several matters for different clients and am contemplating and evaluating various options.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

Thank you for your continued interest in this list. A summary of your discussion list subscriptions, including HOMEFORUM, can be found at http://apps.americanbar.org/elistserv/home.cfm . This new List Subscription Page allows you to manage your lists - unsubscribe from existing or join others.

If you have any issues you may either contact the list owner via email: HOMEFORUM-request@mail.americanbar.org , or the ABA Service Center at phone: 1-800-285-2221 or email: service@americanbar.org .

Exhibit 4

From: **Harold Berk** haroldberk@GMAIL.COM
Subject: Re: Investors Attempting to Purloin Partnerships
Date: November 5, 2014 at 7:53 AM
To: HOMEFORUM@MAIL.AMERICANBAR.ORG

I have received a significant number of private responses detailing various investors and problems of the type I described. So my view that there is a real trend here is quite true.

One person raised an interesting issue concerning the 12 partnership cross-default provisions I described.  If each partnership is composed of an investor LP that is a fund or even a private direct investment through a syndicator, isn't there a significant fiduciary relationship question raised if the GP is removed from partnerships due to the cross default provision even though the GP committed no breach in a specific partnership.  In other words, one investor group is held hostage to what happens in another partnership with different investors.

There are many, many more questions in such proceedings as well as malpractice questions for the GP counsel that approved the cross-default provisions. And what about those investor counsel who inserted this cross default provision in 12 separate partnership agreements?

Sorry for the early morning email, but I have a flight boarding at 5:45 a.m. to fly to Little Rock, AR for a hearing today on the termination of a LIHTC reservation based on reasons having nothing to do with the new project and resulting from GP removal notices by the investor LP in several other partnerships  which the GP contests and were provided by the investor to the tax credit allocating agency.  Any issues there lawyer colleagues?

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 4:03 PM, Harold Berk <haroldberk@gmail.com> wrote:
   I should add that one large investor has inserted cross-default provisions in each of its partnership agreements with the same GP, and then they argue that any default in one leads to default on all by virtue of the cross-default. Of course shame on Partnership GP counsel for agreeing to such a provision. In one case the GP has 12 partnerships with the investor, and the investor has claimed default on all 12 by virtue of the cross-default.

   I am preparing a Demand for Arbitration with the AAA on that one claiming that the ILP violated and breached the terms of the partnership agreement  by removing the GP without the partnership agreement notice and cure provisions being utilized and entitling the GP to damages both compensatory and punitive.   Just sent a letter (actually 12) saying goodbye and turn over all records; its all ours now.

   Harold R. Berk, Esquire
   1041 Glendevon Drive
   Ambler, PA 19002-1855
   215-646-3434
   215-219-0547  mobile
   haroldberk@gmail.com
   http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 2:39 PM, Harold Berk <haroldberk@gmail.com> wrote:
   A new trend seems to have taken place which could undermine the LIHTC investment world and needs to be stopped.
   I have been retained by several different general partners where their investor in LIHTC partnerships have issued default letters and in some cases removed the general partner or converted the general partner's interest to a much reduced special limited partner, or both. Many of these cases are being done where significant deferred development fees are owed to the general partner and/or developer. This is surely permissible with real, material breaches by the GP, but in some of the cases I have seen, very insignificant issues have been raised by the investor or SLP to justify removal of the GP.

   In one case there was  disparity between required security deposits and actual deposits of $5.00, but this was asserted to be a default justifying removal. In other cases,  a certain payment of perhaps $5,000.00 is referenced and the investor says as to the specific payment it should have been made by the GP and not the Partnership. In another case there was a $2,500.00 payment that was erroneously paid to the developer as deferred developer fees outside the terms of the waterfall, and though the GP-developer  restored the funds, the investor nevertheless declared a default and removed the GP.

   In one situation, thought  there was a notice and cure provision, an incorrect payment five years ago was noted, and though repaid, the investor said you cannot cure because the improper payment was made so long ago. It claimed this was a waiver of notice and right to cure.

   The investors in these situations are seeking to take total control of the partnership assets on very immaterial grounds particularly when the result is the deprivation of the developer's hard earned but unpaid deferred developer fee.

   I have not seen such investor behavior up until now, but in conversations with other counsel it seems to be a trend, but a very bad one as it undermines the integrity and trust of the LIHTC community.

Those of you who represent investors should be vigilant in urging your investor clients not to initiate insubstantial removal actions.

Those representing developers and GPs  may need to consult with litigation counsel as to potential remedies. I am doing so on several matters where litigation seems inevitable.

Unfortunately, I have to suggest that at the next ABA Forum meeting in May, 2015 perhaps we need a session or two on litigation and arbitration of claims on investor-GP-developer controversies.

If anyone has a client with such a GP removal problem, I would appreciate hearing from you privately as I have several matters for different clients and am contemplating and evaluating various options.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

Thank you for your continued interest in this list. A summary of your discussion list subscriptions, including HOMEFORUM, can be found at http://apps.americanbar.org/elistserv/home.cfm . This new List Subscription Page allows you to manage your lists - unsubscribe from existing or join others.

If you have any issues you may either contact the list owner via email: HOMEFORUM-request@mail.americanbar.org , or the ABA Service Center at phone: 1-800-285-2221 or email: service@americanbar.org .

Exhibit 5

**From:** Harold Berk [mailto:haroldberk@gmail.com]
**Sent:** Wednesday, November 05, 2014 1:33 AM
**To:** Whitney, Shawn; Denny, Roger; Smith, Jason; Bob Harrison; Dale Lancaster; Kris Ainsworth; Pierce Ledbetter; Kenya Purnell
**Subject:** Fwd: Investors Attempting to Purloin Partnerships

Mr. Whitney:

This is your Hunt baby.  Make sure you advise the Hunt folks that the storm waters are growing for them.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

---------- Forwarded message ----------
From: **Harold Berk** <haroldberk@gmail.com>
Date: Wed, Nov 5, 2014 at 3:31 AM
Subject: Re: Investors Attempting to Purloin Partnerships
To: ABA Forum on Affordable Housing and CD Law Members <HOMEFORUM@mail.americanbar.org>
Cc: Harold Berk <haroldberk@gmail.com>

I have received a significant number of private responses detailing various investors and problems of the type I described. So my view that there is a real trend here is quite true.

One person raised an interesting issue concerning the 12 partnership cross-default provisions I described.  If each partnership is composed of an investor LP that is a fund or even a private direct investment through a syndicator, isn't there a significant fiduciary relationship question raised if the GP is removed from partnerships due to the cross default provision even though the GP committed no breach in a specific partnership.  In other words, one investor group is held hostage to what happens in another partnership with different investors.

There are many, many more questions in such proceedings as well as malpractice questions for the GP counsel that approved the cross-default provisions. And what about those investor counsel who inserted this cross default provision in 12 separate partnership agreements?

Sorry for the early morning email, but I have a flight boarding at 5:45 a.m. to fly to Little Rock, AR for a hearing today on the termination of a LIHTC reservation based on reasons having nothing to do with the new project and resulting from GP removal notices by the investor LP in several other partnerships  which the GP contests and were provided by the investor to the tax credit allocating agency.  Any issues there lawyer colleagues?

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 4:03 PM, Harold Berk <haroldberk@gmail.com> wrote:
I should add that one large investor has inserted cross-default provisions in each of its

partnership agreements with the same GP, and then they argue that any default in one leads to default on all by virtue of the cross-default. Of course shame on Partnership GP counsel for agreeing to such a provision. In one case the GP has 12 partnerships with the investor, and the investor has claimed default on all 12 by virtue of the cross-default.

I am preparing a Demand for Arbitration with the AAA on that one claiming that the ILP violated and breached the terms of the partnership agreement  by removing the GP without the partnership agreement notice and cure provisions being utilized and entitling the GP to damages both compensatory and punitive.   Just sent a letter (actually 12) saying goodbye and turn over all records; its all ours now.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Tue, Nov 4, 2014 at 2:39 PM, Harold Berk <haroldberk@gmail.com> wrote:
A new trend seems to have taken place which could undermine the LIHTC investment world and needs to be stopped.
I have been retained by several different general partners where their investor in LIHTC partnerships have issued default letters and in some cases removed the general partner or converted the general partner's interest to a much reduced special limited partner, or both.  Many of these cases are being done where significant deferred development fees are owed to the general partner and/or developer. This is surely permissible with real, material breaches by the GP, but in some of the cases I have seen, very insignificant issues have been raised by the investor or SLP to justify removal of the GP.

In one case there was  disparity between required security deposits and actual deposits of $5.00, but this was asserted to be a default justifying removal. In other cases,  a certain payment of perhaps $5,000.00 is referenced and the investor says as to the specific payment it should have been made by the GP and not the Partnership. In another case there was a $2,500.00 payment that was erroneously paid to the developer as deferred developer fees outside the terms of the waterfall, and though the GP-developer  restored the funds, the investor nevertheless declared a default and removed the GP.

In one situation, thought  there was a notice and cure provision, an incorrect payment five years ago was noted, and though repaid, the investor said you cannot cure because the improper payment was made so long ago. It claimed this was a waiver of notice and right to cure.

The investors in these situations are seeking to take total control of the partnership assets on very immaterial grounds particularly when the result is the deprivation of the developer's hard earned but unpaid deferred developer fee.

I have not seen such investor behavior up until now, but in conversations with other counsel it seems to be a trend, but a very bad one as it undermines the integrity and trust of the LIHTC community.

Those of you who represent investors should be vigilant in urging your investor clients not to initiate insubstantial removal actions.

Those representing developers and GPs  may need to consult with litigation counsel as to potential remedies. I am doing so on several matters where litigation seems inevitable.

Unfortunately, I have to suggest that at the next ABA Forum meeting in May, 2015 perhaps we need a session or two on litigation and arbitration of claims on investor-GP-developer controversies.

If anyone has a client with such a GP removal problem, I would appreciate hearing from you privately as I have several matters for different clients and am contemplating and evaluating various options.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

**P** *: Please consider the environment before printing this e-mail*

This e-mail, including all information contained therein and any attachments, is intended solely for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not an intended recipient, or an agent responsible for delivering it to an intended recipient, you have received this email in error. In such event, please immediately (i) notify the sender by reply email, (ii) do not review, copy, save, forward or print this email or any of its attachments, and (iii) delete and/or destroy this email and its attachments and all copies thereof. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, any e-mail sent in error, including all information contained therein and any attachments, by persons or entities other than the intended recipient is prohibited. Please visit our website at www.huntcompanies.com for important information about our privacy policies. For your protection, please do not transmit account information or instructions by e-mail or include account numbers, Social Security numbers, credit card numbers, passwords or other personal information.

Exhibit 6

From: **Harold Berk** haroldberk@GMAIL.COM
Subject: Claims Against Predatory Investors and Acquirers of Distressed Syndicator Assets
Date: November 13, 2014 at 2:45 AM
To: HOMEFORUM@MAIL.AMERICANBAR.ORG

I have been engaged on a number of matters where Investors are removing General Partners from LIHTC partnerships sometimes with material breaches by the GP but often with immaterial or low grade breaches.  Among the worst though, and a note of caution for all of you developer counsel out there, are the new category of Syndicator Vultures who go out and acquire the interests of depleted, tired, bankrupt or negative opportunistic syndicators.  Beware the Syndicator Vultures.

The problem is you are negotiating a partnership agreement with a syndicator that you and/or your client has long and beneficial relations, and since there is relationship and good feelings, you tend to go easy on the somewhat draconian provisions that some syndicators and direct investors insert in their partnership agreement You think it would be terrible if they actually did that, but since there is relationship you let it pass and hope for the best.  That is the old world where some syndicators and investors will waive adjusters and overlook technical violations but which are not suggestive of malfeasance.

Now welcome to the new world with the entry of the Vulture Syndicators.  Yes there are financial sharks out there who are always looking for opportunities, and if they can acquire ILP interests post credit period but within the compliance period at minimal cost and then proceed to wreck havoc with the GP by enforcing all those provisions that you allowed when there were good guys in the syndicator-investor seat.  Of course the GP has to consent to admission of the Vulture Syndicator but at the point of admission the Vulture Syndicator presents themselves as Bambi and Little Red Riding Hood.  But after admission, the Vulture Syndicator laughs heartily, takes off their good guy mask and all of a sudden you find yourself in partnership with the Devil Incarnate whose only objective is to get the GP out of the partnership and thereby control the real estate assets.

So for educational purposes let me tell you about a current matter in which I became engaged 10 days ago, but in deference to the ABA and Forrest Milder, without mention of any names.

A syndicator went bankrupt and sold what it called its "Tax Credit Business" in Section 363 proceedings in Bankruptcy Court free and clear of liens etc. The Vulture Syndicator actually got the bad end of the deal though since all the Bankrupt Syndicator sold was Special Limited Partner interests. Now normally people create SLPs to have the authority to do the heavy lifting that the Investor Limited Partner (ILP) would not want to do to avoid losing limited liability by exercising partnership control through its conduct. But this Bankrupt Syndicator did something different, and rather inexplicable, it created SLPs but gave them absolutely no authority or control and vested the heavy lifting in the ILP directly including the right to remove the GP.  To make matters worse, the Bankrupt Syndicator was not a member of  the ILP but only a non-member manager by contract with the ILP. So the Tax Credit Business being sold consisted of worthless SLPs and non-member manager positions by contract with ILPs.  The Bankrupt Syndicator exited, counted its cash proceeds and laughed at the ""smart" Vulture.  A little Due Diligence which could be done in short time might have helped the Vulture Syndicator but at least the lawyers developed reams of paper and were paid well.

So now the Vulture Syndicator ("VS") is feeling abused and wants to maximize its return on its negligible investment (though you could say they got what they paid for).  So the VS examines the partnerships in which it has acquired worthless SLP interests and examines old audits, financial records, 8823s, and anything suggestive of a breach even if immaterial or or only marginal concern.

Now to my client. It is GP in five LIHTC partnerships developed between 2001 and 2004. The VS does not seek to transfer SLP interests to its own entities so it avoids amendment of the Partnership Agreement and consent by GP as it has acquired all the rights of the SLP including member interests and stock as the case may be.  The VS assumes the Asset Management Contract of the BS but the ILPs remain the same, and the VS is only a non-member manager by contract, so again no amendment of the partnership agreement and no opportunity for GP consent.

Then the VS takes off its nice guy mask and sends a notice to the five GPs that based on certain breaches of the partnership agreement it gives notice that it is the intent of the VS to remove them as GPs in all five partnerships.  Some of the "breaches" involve payment five years ago of intercompany loans from one GP to another to permit development of a new LIHTC project which the VS says is a breach since the loans were not approved by BS. And there is no opportunity to cure as the loans were made five years ago and what is done is done.

VS gives notice that under the Partnership Agreement GPs can make an offer to buy-out VS. GPs in fact make an offer to buy out VS for $500,000.  But 20 days alter, VS counters and offers to sell one of five partnerships for $750,000 but wants to retain the other four partnerships and remove the GP from them.  Counsel for GPs, due to change in law firms, refers to me as counsel to GPs noting that I already have some other experience with VS.

I find that the Removal Notice was sent by counsel for the VS and identifies themselves as counsel to the Asset Manager of ILPs. They are not counsel to the ILPs, but law firm for VS says it has authority as counsel to Asset Manager to give notice of removal of the GPs.  I ask for a copy of the Asset Management Agreement.  They have refused to provide it.  I ask for anything that gives VS authority to remove GPs, but they refuse to produce anything.  I ask for resolutions of ILPs authorizing VS to remove GPs, but they refuse to produce anything.  However, they demand final offer on buy-out over last weekend. I say we are not making any offers until provided with authority of VS to remove GPs.  I revoke initial $500,000 offer and reject $750,000 counteroffer of VS.

Being convinced that the VS does not really have authority to remove the GPs since what ILPs are going to let an Asset Manger remove GPs without a vote or resolution of the ILPs?  I again demand Asset Management Agreement and any authority of VS to remove GPs, and again VS refuses to produce but still insists on receiving an immediate final buy-out offer from GPs.

I review Fannie Mae mortgages and they have typical clause prohibiting transfer of a Controlling Interest without Fannie consent, and I ask for Fannie consents, but again no VS response.  I review state allocating agency regulations binding on Partnerships and they limit transfers and recent QAPs require GP to remain for certain periods of time and impose other controls on changes of GPs requiring stage agency consent. I ask for state agency consents, but no response from VS.

I then notify counsel for VS that in my opinion VS counsel and VS have committed wire fraud, mail fraud and conspiracy to commit mail and wire fraud as they have demanded substantial payments on threat of removal of GPs even though I believe that in reality VS does not have authority to remove GPs.  I give them a deadline to produce authority to remove GPs or I will take certain actions, but they do not respond.  I advise I will refer matter to U.S. Attorney for jurisdiction, General Counsel for Fannie Mae and General Counsel for state housing finance agency.  They still refuse to produce authority but they will not release or terminate notices of removal of GPs.

Counsel for VS are not members of the ABA Forum on Affordable Housing and Community Development Law.

I am preparing civil litigation and subpoenas. What claims would you include?

I am also contacting USA, Fannie and state agency.

Thoughts, comments, ideas?   (email also reproduced on attached document).

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

Thank you for your continued interest in this list. A summary of your discussion list subscriptions, including HOMEFORUM, can be found at http://apps.americanbar.org/elistserv/home.cfm . This new List Subscription Page allows you to manage your lists - unsubscribe from existing or join others.

If you have any issues you may either contact the list owner via email: HOMEFORUM-request@mail.americanbar.org , or the ABA Service Center at phone: 1-800-285-2221 or email: service@americanbar.org .



Exhibit 7

**From:** Harold Berk <haroldberk@gmail.com>
**Date:** November 21, 2014 at 11:01:31 AM CST
**To:** "Goldstein, Richard" <RGOLDSTEIN@nixonpeabody.com>
**Cc:** "Milder, Forrest" <fmilder@nixonpeabody.com>, Michael Novogradac <michael.novogradac@novoco.com>, Shel Schreiberg <schreibergs@pepperlaw.com>, jerome breed <jerome.breed@bryancave.com>, Scott Fireison <FIREISOS@pepperlaw.com>, "judster71@gmail.com" <judster71@gmail.com>, Richard Power <rpower@cmprlaw.com>, "Callison, J. William" <William.Callison@faegrebd.com>, William Aaron <waaron@aarongianna.com>
**Subject:** Re: Hunt Companies, Inc.

Open your eyes to your client's behavior.

For all you Hunt attorneys here is the question. Hunt removes my clients as GPs without obtaining advance consent from the lender Enterprise Mortgage even though Sections 22 and 23 require advance lender consent, and if not granted it is an Event of Default under each of the five Mortgages. We have called on Enterprise to declare a default and order Hunt to cure by restoring our clients as GPs.  but Hunt is only the non-member Manager. So if Hunt deliberately and intentionally took action resulting in a default under the mortgages have they not breached their fiduciary duties to all of the investor members of each Ohio LLC that is an ILP?

Counsel for Hunt in our conference with the judge admitted that may be the case and that there could be claims against Hunt by each of the investor members. Don't you think a good Hunt lawyer should say, Hunt hold on now, don't create liability for yourself, but no one has done so despite the admission to the Judge by counsel for Hunt.  I advised Jerre Thompson of Ballard Spahr who represented Hunt in the Capmark buy that Hunt was getting bad advice from its lawyers in LA and he might want to inquire if they need help.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-896-2882  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Fri, Nov 21, 2014 at 11:50 AM, Goldstein, Richard <RGOLDSTEIN@nixonpeabody.com> wrote:
Harold, I would respectfully request that you stop sending us emails regarding Hunt, which is a client of our firm.

Richard S. Goldstein
Partner
Nixon Peabody LLP
401 Ninth Street NW
Suite 900
Washington, DC 20004
(202) 585-8730 (Direct)
(301) 646-3428 (Cell)
rgoldstein@nixonpeabody.com
www.nixonpeabody.com

On Nov 21, 2014, at 5:21 AM, "Harold Berk"
<haroldberk@gmail.com> wrote:

Hunt has been working hard to give me a lot of work, not directly  but through my clients, and as an example
yesterday afternoon Hunt filed a lawsuit based on diversity jurisdiction against my five general partner clients
in New Orleans who were allegedly and we claim without authority removed by Hunt as GPs on Tuesday,
November 18, 2014 in which they seek damages, injunctive relief and an "emergency" restraining order or
what I always called a TRO.  Judge Engelhardt in new Orleans was assigned to the case yesterday afternoon,
and he has set a telephonic hearing on the case to occur this morning at 9:00 am. CST.  So I cannot attend
to AHF Live as I will be in federal court in New Orleans this morning but located in my room at the
Swissotel here in Chicago.

Now what is interesting for all of you is that Hunt wants the typical relief when they chase a GP away from a
project the GP developed, funded, built, and operated by orders to provide them with files, bank records and
not to set foot on the properties my clients built.  Hunt is doing this so as to take control of the LIHTC
building multifamily assets for free despite the fact that all Hunt did for these five projects is buy SLP rights
of Capmark and manager rights in existing ILPs while Hunt s a non-memebr manager.
Hunt is trying to maximize its return on the bankruptcy sale by seizing the property for $0.00 so they an add
it to their portfolio of properties where they got rid of those pesky developers and builders.

Now what is interesting for you is that we have challenged Hunt's authority to remove GPs.  Hunt sent
notices of intent to remove the GPs in July 1, 2014 where Baker Donelson attorneys claimed to represent the
Asset Manager for the ILPs.  I asked for copies of the Asset management agreement since I have never seen
an Asset Manager with authority to remove GPs.. Hunt declined to provide the Asset Management
Agreement or any other documents  I have requested. since November 3, 2014 when I was retained on a
referral form Judy Crosby when Judy switched firms.

Hunt now concedes that the Asset manager did not have authority as Baker Donelson now claims in removal
notices sent on Tuesday that they represent the five ILPs themselves. Since Hunt is a non-member manager I

requested copies of the five operating agreements of the Ohio LLCs which were put together by Paramount, the predecessor to GMAC, the predecessor to Capmark, the predecessor to Hunt, but of course was with every other document request Hunt refused to provide them.

Now it gets really interesting.  Since the Enterprise Mortgages, insured by Fannie Mae, have the standard Sections 22 and 23 , there cannot be any transfer of a controlling Interest in the partnerships without the lender's prior consent. I asked Hunt long ago for any lenders's consents, and like everything else they have refused to provide any or even acknowledge the repeated request for lender consents.  So yesterday morning I contacted senior officers of Enterprise including their General Counsel and sent them copies of the five Enterprise Mortgages and the five removal notices, and said have you consented to the GPs removal and if not will you please declare a default of the Borrowers under Section 23 of the mortgages and order Hunt to cure by restoring my clients as GPs. Enterprise has not responded to any emails.  Then my clients are advised by the Enterprise Asset Manager that Fannie Mae has consented to the removal of the GPs. So I then so advise senior officers of Enterprise, and ask Enterprise to remind Fannie me that it is under receivership of the untied States and as such it is subject to the Fifth Amendment of the US Constitution and if Fannie has consented then Fannie has violated my client's right to procedural due process as they received no notice that Fannie was considering consent and they were given no opportunity to respond to Hunt's allegations justifying removal. we will then have to add Fannie as an additional defendant and depending upon what Enterprise did they may also be an additional  defendant. If no consents were give Enterprise must declare defaults and if they do not we will add them as a defendant and seek an injunction requiring them to default the Hunt ILPs. and to order Hunt ILPs to cure by restoring my clients as GPs.

Hunt is of course the Vulture Syndicator on my two ABA postings on the subject for which the ABA has now barred me from further posting, which is fine with me as I never in the future intend to post anything for the educational benefit of ABA lawyers as I have many times in the past..

Mr. William Aaron is my co-counsel in New Orleans having agreed to assist last night. Bill is a veteran of some other GP-LP wars.

Anyone see any issues of interest here?

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-896-2882  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com


🖨 : *Please consider the environment before printing this e-mail*


This e-mail, including all information contained therein and any attachments, is intended solely for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not an intended recipient, or an agent responsible for delivering it to an intended recipient, you have received this email in error. In such event, please immediately (i) notify the sender by reply email, (ii) do not review, copy, save, forward or print this email or any of its attachments, and (iii) delete and/or destroy this email and its attachments and all copies thereof. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, any e-mail sent in error, including all information contained therein and any attachments, by persons or entities other than the intended recipient is prohibited. Please visit our website at www.huntcompanies.com for important information about our privacy policies. For your

protection, please do not transmit account information or instructions by e-mail or include account numbers, Social Security numbers, credit card numbers, passwords or other personal information.

Exhibit 8

**From:** Harold Berk [mailto:haroldberk@gmail.com]
**Sent:** Monday, November 17, 2014 3:21 AM
**To:** Thompson, Jere (Phila)
**Cc:** rrose39963@aol.com; Michael Peralta; Wayne Neveu; kcunningham@lhc.la.gov
**Subject:** Fwd: Claims Against Predatory Investors and Acquirers of Distressed Syndicator Assets

Mr. Thompson:

I do not know if you are a member of the ABA Forum on Affordable Housing and Community Development Law, but I thought you might be interested in two postings I have made on the ABA Forum ListServe concerning  a matter I am currently handling concerning five LIHTC limited partnerships in New Orleans and the efforts of your client, Hunt, to extract substantial sums form my client based on their claim that if not paid they will remove my clients as general partners from the five Louisiana limited partnerships.

Hunt has been represented by Baker Donelson of New Orleans (Memphis, Nashville etc.), and one partner of Baker Donelson, Steven Griffith, has gone far, far over the edge in committing professional malpractice, violations of the LA Rules of Professional Conduct and mail and wire fraud  all of which are being brought to the attention by me of the United States Attorney for the Eastern District of Louisiana, Kenneth Polite.

I am sending you this email as you represented Hunt in the purchase of the Capmark "tax credit business" from the Capmark Bankruptcy estate. Since you may know something about the contents of he Asset Management Agreements that Hunt acquired as art of its Sale Agreement with Capmark, you may have information relevant to the proceedings referenced in my email to the ABA Forum.  If so, please preserve and retain all records concerning that transaction and the electronic communication related to it.

I might note to you that Hunt has been very poorly served by Baker Donelson in this matter, and you might want to inquire of Hunt whether they need any assistance in dealing with our claims and demands  for the Asset Management Agreements and any votes of members of the various ILPs authorizing the removal of my clients from the five Rose Entities limited partnerships as well as the potential investigation by the U.S. Attorney in New Orleans based on my referral to him.  We of course have also demanded and do demand that they immediately terminate and revoke the five Letters of July 1, 2014 threatening to remove our clients as GPs and the later demands from Baker Donelson for substantial payments to Hunt if our clients are to be permitted to retain their GP interests.

Please note that our clients and the General Counsels of Louisiana Housing Finance Agency are included on this email.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.heberksquire.com

---------- Forwarded message ----------
From: **Harold Berk** <haroldberk@gmail.com>
Date: Mon, Nov 17, 2014 at 2:35 AM
Subject: Re: Claims Against Predatory Investors and Acquirers of Distressed Syndicator Assets
To: ABA Forum on Affordable Housing and CD Law Members <HOMEFORUM@mail.americanbar.org>
Cc: Harold Berk <haroldberk@gmail.com>

An Update to my posting last week about the Vulture Syndicator ("VS") and its efforts to turn trash SLP interests into real cash by threatening to remove GPs.

As of this moment the VS has not produced either the Asset Management Agreement it entered with each of five Investor Limited Partners in the five partnerships, and it has not produced any

resolutions or other expressions of approval whereby a majority in interest of members of the respective ILP LLCs voted to authorize removal of any of the GPs.

On Friday, we brought the matter to the attention of General Counsel of the state housing finance agency (tax credit allocating agency) and provided GC with copies of the documents and emails between the parties. We asked GC to have state agency launch investigation of VS and its counsel.

I am preparing revisions to a letter to the United States Attorney for the jurisdiction in which the LIHTC properties are located including a large box of the applicable documents including records of the Bankruptcy whereby VS acquired its interests, copies of all five limited partnership agreements, the offers and counter-offers of the parties and the revocation and rejection of same by me, and a complete record of the email communication between me and counsel to VS.  The complete package will be delivered to FedEx this morning for delivery to US Attorney tomorrow.

I also prepared draft Subpoenas in the to-be prepared civil litigation by the GPs and Partnerships against VS and its counsel, and those drafts were sent to counsel for VS. The identified witnesses are various officers of VS and its General Counsel and Assistant General Counsel and one partner at counsel for VS. The Subpoenas included a demand for production of among other things the Asset Management Agreement (s)  which VS claims give it authority to remove GPs as well as any resolutions of members of ILPs authorizing VS to remove certain GPs as such.

Counsel for VS have been advised of the submission of documents to US Attorney, and GC of state agency have been included on all emails to counsel for VS since last Friday.  Despite this, counsel for VS have still failed to produce the Asset Management Agreement or votes of members of ILPs authorizing removal of GPs or even to respond to any of the communications concerning the letter an documents going to the US Attorney.

VS and its counsel have taken no action to remove any of the GPs.  Their letters of July 1, 2014 only stated that they intended to remove the GPs, but to date they have not taken any action to do so. In light of potential investigations and referral to US Attorney, it is doubtful VS and its counsel will take any action to remove GPs as I strongly doubt, based on non-production of authorizing documents,  that they have any real authority to do so.

Now I wonder about other GPs who fell for the VS assault and paid mediation money to VS to prevent their removal as GPs of their Partnerships.  Counsel for GPs and Partnerships where VS, or one of its clones, made removal of GP threats in order to obtain payment for the ILP interest might consider potential claims of their clients if such transactions were concluded or if there are outstanding letters of intent to remove the GPs for supposed past breaches of their respective partnership agreements.

Hopefully my recitation of the VS case will be educational and of assistance to other members of the ABA Forum who may encounter similar circumstances.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547 mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Thu, Nov 13, 2014 at 2:38 AM, Harold Berk <haroldberk@gmail.com> wrote:
I have been engaged and am working on a number of matters where Investors are removing General Partners from LIHTC partnerships sometimes with material breaches by the GP but often with immaterial or low grade breaches.  Among the worst though, and point of caution for all of you developer counsel out there, are the new category of Syndicator Vultures who go out and acquire the interests of depleted, tired, bankrupt or negative opportunistic syndicators.  Beware the Syndicator Vultures.

The problem is you are negotiating a partnership agreement with a syndicator that you and/or your client has long and beneficial relations, and since there is relationship and good feelings, you tend to go easy on the somewhat draconian provisions that some syndicators and direct investors insert in their partnership agreement You think it would be terrible if they actually did that, but since there is relationship you let it pass and hope for the best.  That is the old world where some syndicators and investors will waive adjusters and overlook technical violations but which are not suggestive of malfeasance.

Now welcome to the new world with the entry of the Vulture Syndicators.  Yes there are financial sharks out there who are always looking for opportunities, and if they can acquire ILP interests post credit period but within the compliance period at minimal cost and then proceed to wreck havoc with the GP by enforcing all those provisions that you allowed when there were good guys in the syndicator-investor seat.  Of course the GP has to consent to admission of the Vulture Syndicator but at the point of admission the Vulture Syndicator presents themselves as Bambi and Little Red Riding Hood.  But after admission, the Vulture Syndicator laughs heartily, takes off their good guy mask and all of a sudden you find yourself in partnership with the Devil Incarnate whose only objective is to get the GP out of the partnership and thereby control the real estate assets.

So for educational purposes let me tell you about a current matter in which I became engaged 10 days ago, but in deference to the ABA and Forrest Milder, without mention of any names.

A syndicator went bankrupt and sold what it called its "Tax Credit Business" in Section 363 proceedings in Bankruptcy Court free and clear of liens etc. The Vulture Syndicator actually got the bad end of the deal though since all the Bankrupt Syndicator sold was Special Limited Partner interests. Now normally people create SLPs to have the authority to do the heavy lifting that the Investor Limited Partner (ILP) would not want to do to avoid losing limited liability by exercising partnership control through its conduct. But this Bankrupt Syndicator did something different, and rather inexplicable, it created SLPs but gave them absolutely no authority or control and vested the heavy lifting in the ILP directly including the right to remove the GP.  To make matters worse, the Bankrupt Syndicator was not a member of the ILP but only a non-member manager by contract with the ILP. So the Tax Credit Business being sold consisted of worthless SLPs and non-member manager positions by contract with ILPs.  The Bankrupt Syndicator exited, counted its cash proceeds and laughed at the "'smart" Vulture.  A little Due Diligence which could be done in short time might have helped the Vulture Syndicator but at least the lawyers developed reams of paper and were paid well.

So now the Vulture Syndicator ("VS") is feeling abused and wants to maximize its return on its negligible investment (though you could say they got what they paid for).  So the VS examines the partnerships in which it has acquired worthless SLP interests and examines old audits, financial records, 8823s, and anything suggestive of a breach even if immaterial or of only marginal concern.

Now to my client. It is GP in five LIHTC partnerships developed between 2001 and 2004. The VS does not seek to transfer SLP interests to its own entities so it avoids amendment of the Partnership Agreement and consent by GP as it has acquired all the rights of the SLP including member interests and stock as the case may be.  The VS assumes the Asset Management Contract of the BS but the ILPs remain the same, and the VS is only a non-member manager by contract, so again no amendment of the partnership agreement and no opportunity for GP consent.

Then the VS takes off its nice guy mask and sends a notice to the five GPs that based on certain breaches of the partnership agreement it gives notice that it is the intent of the VS to remove them as GPs in all five partnerships.  Some of the "breaches" involve payment five years ago of intercompany loans from one GP to another to permit development of a new LIHTC project which the VS says is a breach since the loans were not approved by BS. And there is no opportunity to cure as the loans were made five years ago and what is done is done.

VS gives notice that under the Partnership Agreement GPs can make an offer to buy-out VS. GPs in fact make an offer to buy out VS for $500,000.  But 20 days after, VS counters and offers to sell one of five partnerships for $750,000 but wants to retain the other four partnerships and remove the GP from them.  Counsel for GPs, due to change in law firms, refers to me as counsel to GPs noting that I already have some other experience with VS.

I find that the Removal Notice was sent by counsel for the VS and identifies themselves as counsel to the Asset Manager of ILPs. They are not counsel to the ILPs, but law firm for VS says it has authority as counsel to Asset Manager to give notice of removal of the GPs. I ask for a copy of the Asset Management Agreement.  They refuse to provide it.  I ask for anything that gives VS authority to remove GPs, but they refuse to produce anything.  I ask for resolutions of ILPs authorizing VS to remove GPs, but they refuse to produce anything. However, they demand final offer on buy-out over last weekend. I say we are not making any offers until provided with authority of VS to remove GPs.  I revoke initial $500,000 offer and reject $750,000 counteroffer of VS.

Being convinced that the VS does not really have authority to remove the GPs since what ILPs are going to let an Asset Manger remove GPs without a vote or resolution of the ILPs?  I again demand Asset Management Agreement and any authority of VS to remove GPs, and again VS refuses to produce but still insists on receiving an immediate final buy-out offer from GPs.

I review Fannie Mae mortgages and they have typical clause prohibiting transfer of a Controlling Interest without Fannie consent, and I ask for Fannie consents, but again no VS response.  I review state allocating agency regulations binding on Partnerships and they limit transfers and recent QAPs require GP to remain for certain periods of time and impose other controls on changes of GPs requiring stage agency consent. I ask for state agency consents, but no response from VS.

I then notify counsel for VS that in my opinion VS counsel and VS have committed wire fraud, mail fraud and conspiracy to commit mail and wire fraud as they have demanded substantial payments on threat of removal of GPs even though I believe that in reality VS does not have authority to remove GPs.  I give them a deadline to produce authority to remove GPs or I will take certain actions, but they do not respond.  I advise I will refer matter to U.S. Attorney for jurisdiction, General Counsel for Fannie Mae and General Counsel for state housing finance agency.  They still refuse to produce authority but they will not release or terminate notices of removal of GPs.

Counsel for VS are not members of the ABA Forum on Affordable Housing and Community Development Law.

I am preparing civil litigation and subpoenas. What claims would you include?

I am also contacting USA, Fannie and state agency.

Thoughts, comments, ideas?   (email also reproduced on attached document).

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

P : *Please consider the environment before printing this e-mail*

This e-mail, including all information contained therein and any attachments, is intended solely for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not an intended recipient, or an agent responsible for delivering it to an intended recipient, please immediately (i) notify the sender by reply email, (ii) do not review, copy, save, forward or print this email or any of its attachments, and (iii) delete and/or destroy this email and its attachments and all copies thereof. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, any e-mail sent in error, including all information contained therein and any attachments, by persons or entities other than the intended recipient is prohibited. Please visit our website at www.huntoncompanies.com for important information about our privacy policies. For your protection, please do not transmit account information or instructions by e-mail or include account numbers. Social Security numbers, credit card numbers, passwords or other personal information.

Exhibit 9

haroldberk@gmail.com<mailto:haroldberk@gmail.com> http://www.hrberkesquire.com
 ---------- Forwarded message ---------- From: Harold Berk
<haroldberk@gmail.com<mailto:haroldberk@gmail.com>> Date: Thu, Nov 20, 2014 at
6:02 AM Subject: Event of Default created by Hunt by removal of five GPs on LIHTC
deals without Enterprise Mortgage Consent To: Terri Ludwig
<tludwig@enterprisecommunity.org<mailto:tludwig@enterprisecommunity.org>>,
lchatman@enterprisecommunity.org<mailto:lchatman@enterprisecommunity.org>,
fthomas@enterprisecommunity.org<mailto:fthomas@enterprisecommunity.org> Cc:
"rrose39963@aol.com<mailto:rrose39963@aol.com>"
<rrose39963@aol.com<mailto:rrose39963@aol.com>>, Michael Peralta
<mrperalta@aol.com<mailto:mrperalta@aol.com>>

 I represent five General partners of 5 Louisiana  LIHTC limited partnerships where the
original syndicator was Capmark and Hunt bought their rights in bankruptcy.  Hunt had
proposed removal of my 5 GP clients for various minor infractions such as five years ago
doing an intercompany loan from one partnership to another to provide predevelopment
funding for a new LIHTC del where Capmark was the Investor Hunt claimed the investor
never approved which was untrue when Capmark got the syndication business on the new
d e  al s.  Hunt on July 1 sent notices of intent to remove but invited offers to purchase
interests. Five GPs through predecessor counsel offered to buy 1 deal in Jefferson Parish,
LA for $500,000 an other 4 for $1 each. Hunt counteroffered on October 30, 2014
offering sell Jefferson Parish deal for $750,000 but requiring the 4 other GPs to assign
their GOP interest in four New Orleans LIHTC deals to Hunt without any
compensation..  Hunt;s counteroffer of $750,000 for 1 and assign away 4 others was
backed up by Hunt saying if my GP clients did not accept they would be removed as
General Partners,  Hunt claimed that an Asset Management Agreement its subsidiary,
HCP Pacific Asset Management, LLC had with five Investor Limited Patnerships (the 5
ILPS in our five LIHTC Limited partnerships) gave it authority to remove the GPs  I
doubted that and asked for the Asset Management Agreement, Hunt would not provide it.
I asked for votes of members of each investor limited partner to remove my clients as

GPs, and Hunt would not provide it.  We then said we would bring this matter to the attention of the United States Attorney for the Eastern District of Louisiana (New Orleans) since Hunt was demanding $750,000 on the threat to remove the GPs if not paid, but we contended that Hunt did not have the authority they claimed as is shown by their refusal to provide us with the Asset Management Agreement they relied on for authority  So Hunt demanded $750,000 on threats of GP removal for which they apparently did not have authority and hence Hunt was guilty of wire fraud, mail fraud, conspiracy to commit wire and mail fraud and extortion.  When Hunt till refused to provide their authority and refused to withdraw the notices of intent to remove the GPs, we sent a letter detailing all of this with 15 pounds of documents to the US Attorney in New Orleans, Kenneth Polite, Jr.. He received our documents on November 18, 2014..  If this sounds familiar so far that is because I wrote about it on two postings on the ABA forum on Affordable Housing ListServe in whcih I called Hunt the Vulture Syndicator.  Then on the same day our documents were received by the US Attorney in New Orleans Hunt sent out notices removing my clients as General Partners of the five LIHTC limited partnerships where Enterprise Mortgage is the mortgagor. Of course Hunt did not seek your consent before removing the GPs despite the provisions of Sections 22 and 23 of your mortgages prohibiting a transfer of a Controlling Interest without Enterprise prior approval.  Under Section 23 that constitutes and Event of Default under your mortgages on all five LIHTC properties.   I sent a letter to the US Attorney yesterday which will be received by him this morning via Fed Ex in which I sent him all five removal notices and they also removed the property manager, Summit.  I told US attorney Polite that hunt took this action in retaliation for our filing the complaint and request for a criminal investigation of Hunt.  The removals of the five GPs effected by Hunt on November 18, 2014 without Enterpirse Mortgage consent constitutes an Event of Default under section 23. The only cure of the Event of Default is an order from you the mortgagee to Hunt advising of their default and demanding a cure by restoration of the GPs as general partners.  My clients are the following general partners: Warren Homes, LLC, Canary Homes, LLC, Hnasko Holding Company, Inc., Robin Homes, LLC and Smith Square, LLC (collectively, the "Rose Entities"), General Partners in each of, respectively, Ames Gardens Estates Limited Partnership, Robin Homes, L.P., Smith Square Development Limited Partnership, Canary Homes, L.P., and Hnasko Affordable Homes, LP (collectively, the "Partnerships") Attached are removal notices and The Enterprise Mortgages.  We request your assistance by declaring an Event of Default has occurred and ordering Hunt to cure by restoring the GPs to their status of general partner    I am today a the AHF Live conference in Chicago.   Harold R. Berk, Esquire 1041 Glendevon Drive Ambler, PA 19002-1855 215-646-3434<tel:215-646-3434> 215-896-2882<tel:215-896-2882>  mobile haroldberk@gmail.com<mailto:haroldberk@gmail.com> http://www.hrberkesquire.com

_____
_

NOVOGRADAC & COMPANY LLP
CERTIFIED PUBLIC ACCOUNTANTS

Please consider the environment before printing this email.
_____

DISCLAIMER: This message and any related attachments
contains Privileged/Confidential information. If you are
not the addressee indicated in this message, you may not
copy, review, distribute or forward the
contents of this message to anyone.   You should notify the
sender, by
reply e-mail, and delete this message from your computer.

Unless we have explicitly stated to the contrary, this
email constitutes an informal communication rather than
formal accounting, tax, valuation or other forms of
professional advice.   Therefore, you must not rely on it
for business, tax, accounting or other important
decisions.   Please contact us if you require confirmation
of formal advice from us.

*: Please consider the environment before printing this e-mail*

This e-mail, including all information contained therein and any attachments, is
intended solely for the person or entity to which it is addressed and may contain
confidential and/or privileged material. If you are not an intended recipient, or an
agent responsible for delivering it to an intended recipient, you have received this
email in error. In such event, please immediately (i) notify the sender by reply
email, (ii) do not review, copy, save, forward or print this email or any of its
attachments, and (iii) delete and/or destroy this email and its attachments and all
copies thereof. Any review, retransmission, dissemination or other use of, or
taking of any action in reliance upon, any e-mail sent in error, including all
information contained therein and any attachments, by persons or entities other
than the intended recipient is prohibited. Please visit our website at
www.huntcompanies.com for important information about our privacy policies.
For your protection, please do not transmit account information or instructions by
e-mail or include account numbers, Social Security numbers, credit card
numbers, passwords or other personal information.

<Ames Gardens Estates Removal Notice.pdf>


<Canary Homes Removal Notice.pdf>

<Hnasko Homes Removal Notice.pdf>

<Robin Homes Removal Notice.pdf>

<Smith Square Removal Notice.pdf>

<Removal of Apt Manager.pdf>

<Ames Mortgage.pdf>

<Canary Hme mortgage to enterprise.pdf>

<Hnasko Mortgage.pdf>

Exhibit 10

**From:** "Harold Berk" <haroldberk@gmail.com> **To:** "Michael Novogradac" <Michael.Novogradac@novoco.com> **Subject: Fwd: Event of Default created by Hunt by removal of five GPs on LIHTC deals without Enterprise Mortgage Consent**

Accountants and lawyers need to know bad things their clients are doing for heir own protection. I Google clients to find the bad stuff they don't tell me. I would suggest you do likewise so as not to end up like Enron auditors, and you know what happened there.  Big guys go bust and goodbye by linkage to bad actor client.  If it could happen to Enron's auditors it could happen to anyone. 'reconsider.  get all the bad news you can but don;t always believe it without verification.

Harold R. Berk, Esquire
1041 Glendevon Drive Ambler, PA 19002-1855
215-646-3434
215-896-2882  mobile

haroldberk@gmail.com<mailto:haroldberk@gmail.com> http://www.hrberkesquire.com
 ---------- Forwarded message ---------- From: Harold Berk
<haroldberk@gmail.com<mailto:haroldberk@gmail.com>> Date: Thu, Nov 20, 2014 at 6:02 AM Subject: Event of Default created by Hunt by removal of five GPs on LIHTC deals without Enterprise Mortgage Consent To: Terri Ludwig
<tludwig@enterprisecommunity.org<mailto:tludwig@enterprisecommunity.org>>,
lchatman@enterprisecommunity.org<mailto:lchatman@enterprisecommunity.org>,
fthomas@enterprisecommunity.org<mailto:fthomas@enterprisecommunity.org> Cc:
"rrose39963@aol.com<mailto:rrose39963@aol.com>"
<rrose39963@aol.com<mailto:rrose39963@aol.com>>, Michael Peralta
<mrperalta@aol.com<mailto:mrperalta@aol.com>>

 I represent five General partners of 5 Louisiana  LIHTC limited partnerships where the original syndicator was Capmark and Hunt bought their rights in bankruptcy.  Hunt had proposed removal of my 5 GP clients for various minor infractions such as five years ago doing an intercompany loan from one partnership to another to provide predevelopment funding for a new LIHTC del where Capmark was the Investor Hunt claimed the investor never approved which was untrue when Capmark got the syndication business on the new d e  al s.  Hunt on July 1 sent notices of intent to remove but invited offers to purchase interests. Five GPs through predecessor counsel offered to buy 1 deal in Jefferson Parish, LA for $500,000 an other 4 for $1 each. Hunt counteroffered on October 30, 2014 offering sell Jefferson Parish deal for $750,000 but requiring the 4 other GPs to assign their GOP interest in four New Orleans LIHTC deals to Hunt without any compensation..  Hunt;s counteroffer of $750,000 for 1 and assign away 4 others was backed up by Hunt saying if my GP clients did not accept they would be removed as General Partners,  Hunt claimed that an Asset Management Agreement its subsidiary, HCP Pacific Asset Management, LLC had with five Investor Limited Patnerships (the 5 ILPS in our five LIHTC Limited partnerships) gave it authority to remove the GPs  I doubted that and asked for the Asset Management Agreement, Hunt would not provide it. I asked for votes of members of each investor limited partner to remove my clients as

GPs, and Hunt would not provide it.  We then said we would bring this matter to the attention of the United States Attorney for the Eastern District of Louisiana (New Orleans) since Hunt was demanding $750,000 on the threat to remove the GPs if not paid, but we contended that Hunt did not have the authority they claimed as is shown by their refusal to provide us with the Asset Management Agreement they relied on for authority  So Hunt demanded $750,000 on threats of GP removal for which they apparently did not have authority and hence Hunt was guilty of wire fraud, mail fraud, conspiracy to commit wire and mail fraud and extortion.  When Hunt till refused to provide their authority and refused to withdraw the notices of intent to remove the GPs, we sent a letter detailing all of this with 15 pounds of documents to the US Attorney in New Orleans, Kenneth Polite, Jr.. He received our documents on November 18, 2014..  If this sounds familiar so far that is because I wrote about it on two postings on the ABA forum on Affordable Housing ListServe in whcih I called Hunt the Vulture Syndicator.  Then on the same day our documents were received by the US Attorney in New Orleans Hunt sent out notices removing my clients as General Partners of the five LIHTC limited partnerships where Enterprise Mortgage is the mortgagor. Of course Hunt did not seek your consent before removing the GPs despite the provisions of Sections 22 and 23 of your mortgages prohibiting a transfer of a Controlling Interest without Enterprise prior approval.  Under Section 23 that constitutes and Event of Default under your mortgages on all five LIHTC properties.   I sent a letter to the US Attorney yesterday which will be received by him this morning via Fed Ex in which I sent him all five removal notices and they also removed the property manager, Summit.  I told US attorney Polite that hunt took this action in retaliation for our filing the complaint and request for a criminal investigation of Hunt.  The removals of the five GPs effected by Hunt on November 18, 2014 without Enterpirse Mortgage consent constitutes an Event of Default under section 23. The only cure of the Event of Default is an order from you the mortgagee to Hunt advising of their default and demanding a cure by restoration of the GPs as general partners.  My clients are the following general partners: Warren Homes, LLC, Canary Homes, LLC, Hnasko Holding Company, Inc., Robin Homes, LLC and Smith Square, LLC (collectively, the "Rose Entities"), General Partners in each of, respectively, Ames Gardens Estates Limited Partnership, Robin Homes, L.P., Smith Square Development Limited Partnership, Canary Homes, L.P., and Hnasko Affordable Homes, LP (collectively, the "Partnerships") Attached are removal notices and The Enterprise Mortgages.  We request your assistance by declaring an Event of Default has occurred and ordering Hunt to cure by restoring the GPs to their status of general partner
   I am today a the AHF Live conference in Chicago.   Harold R. Berk, Esquire 1041 Glendevon Drive Ambler, PA 19002-1855 215-646-3434<tel:215-646-3434> 215-896-2882<tel:215-896-2882>  mobile haroldberk@gmail.com<mailto:haroldberk@gmail.com> http://www.hrberkesquire.com

_____
_

NOVOGRADAC  &  COMPANY  LLP
CERTIFIED  PUBLIC  ACCOUNTANTS

Please consider the environment before printing this email.
_____

DISCLAIMER: This message and any related attachments
contains Privileged/Confidential information. If you are
not the addressee indicated in this message, you may not
copy, review, distribute or forward the
contents of this message to anyone.   You should notify the
sender, by
reply e-mail, and delete this message from your computer.

Unless we have explicitly stated to the contrary, this
email constitutes an informal communication rather than
formal accounting, tax, valuation or other forms of
professional advice.   Therefore, you must not rely on it
for business, tax, accounting or other important
decisions.   Please contact us if you require confirmation
of formal advice from us.

🖨 : *Please consider the environment before printing this e-mail*

This e-mail, including all information contained therein and any attachments, is intended solely for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not an intended recipient, or an agent responsible for delivering it to an intended recipient, you have received this email in error. In such event, please immediately (i) notify the sender by reply email, (ii) do not review, copy, save, forward or print this email or any of its attachments, and (iii) delete and/or destroy this email and its attachments and all copies thereof. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, any e-mail sent in error, including all information contained therein and any attachments, by persons or entities other than the intended recipient is prohibited. Please visit our website at www.huntcompanies.com for important information about our privacy policies. For your protection, please do not transmit account information or instructions by e-mail or include account numbers, Social Security numbers, credit card numbers, passwords or other personal information.

<Ames Gardens Estates Removal Notice.pdf>

<Canary Homes Removal Notice.pdf>

<Hnasko Homes Removal Notice.pdf>

<Robin Homes Removal Notice.pdf>

<Smith Square Removal Notice.pdf>

<Removal of Apt Manager.pdf>

<Ames Mortgage.pdf>

<Canary Hme mortgage to enterprise.pdf>

<Hnasko Mortgage.pdf>

Exhibit 11

**From:** Harold Berk [mailto:haroldberk@gmail.com]
**Sent:** Sunday, November 09, 2014 1:06 PM
**To:** Griffith, Steve; Pelleteri, Erin
**Cc:** Juneau, Matt; rrose39963@aol.com; Michael Peralta; Judith K. Crosby
**Subject:** Re: Rose Entities -- Follow-Up

Ms. Wadle, who was open copied on your correspondence, has made certain statements about the limited nature of the acquisitions by the Hunt entities.  Her statements may or may not be true, but we require that you provide us with written documentation demonstrating your authority to act for the LP and the ability of the LP to act in light of various superceding transactions.

I am attaching the first part of the Hunt purchase agreement with the Capmark entities and Protech Development.  he definition of Initlal Sale Assets and Subsequent Sale Assets is not defined except with reference to a Schedule 1.1(g) attached to the Agreement.  Would you kindly provide us with a copy of this Schedule and the other applicable schedules defining with some precision the assets being purchased as part of the bankruptcy court approved sale, and with respect to the instant five partnerships please provide us with copies of the assignment agreements whereby Protech and other various entities described in the Agreement and others assigned various rights to Hunt and its

related entities.

Please also provide us with a copy of the complete and as amended limited partnership agreement for each of the five respective partnerships.

I am representing GPs with respect to other partnerships in which Hunt entities are involved. In those other cases I requested certain significant documents two months ago, but to date they were not provided, and as a result at a hearing conducted by the Arkansas Development Finance Authoirty on November 5, 2014, I had to advise the Authority that we had requested these certain documents from Hunt two months ago but they were not forthcoming, ADFA then produced for us the documents which Hunt had failed to produce.

If you fail to promptly produce these requested documents regarding the assets sold and the assignment documents among others, we will seek relief from an appropriate court and/or the bankruptcy court in Capmark as it retained jurisidiction for enforcement.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Sun, Nov 9, 2014 at 12:22 PM, Alison Wadle <alison.wadle@huntcompanies.com> wrote:
Harold,

Capmark was a non-member manager of the fund and did not own any partnership interests in the LP.  As in every LIHTC fund, the

investors own all limited partnership interests and the fund is managed by a manager.  The assignment to Hunt of the non-member management interest does not require the consent of the GP or the lenders.

Finally, as Hunt is represented by counsel, please only contact our attorneys, Steve Griffith and Erin Pelleteri of Baker Donelson.  Please remove me from any further correspondence.

Thank you.


Alison Wadle | Vice President | Legal Department
Phone: 303.927.5031 | Cell: 720.299.2837
1225 17th Street, Suite 1400 | Denver, CO | 80202
Hunt Companies | alison.wadle@huntcompanies.com
www.huntcompanies.com

D E V E L O P .  I N V E S T .  M A N A G E .


**From:** Harold Berk [mailto:haroldberk@gmail.com]
**Sent:** Sunday, November 09, 2014 3:58 AM
**To:** Griffith, Steve
**Cc:** Pelleteri, Erin; Juneau, Matt; rrose39963@aol.com; Michael Peralta; Judith K. Crosby; Alison Wadle
**Subject:** Re: Rose Entities -- Follow-Up

Further under the partnership agreement there is most likely a provision prohibiting assignment and substitution of a majority of the limited partners; interest without consent of the GP and any lender reqeuiring consent to change in partners or a majority interest i any partner.  Please therefore also provide me with the consents of all lenders to the admission of the Hunt entities as the controlling interest of the limited partner. In the absence of lender consent.

Note that the bankruptcy court merely authorized the sale of the LP interests in Capmark but there is nothing in the bankruptcy court orders which automatically substitutes the Hunt entities as the LP as that would be beyond the power of the bankruptcy court and would interfere with rights of parties who had no participation in the bankruptcy except to the extent they were creditors.

I sincerely doubt that based on the records provided to me so far (which are not complete) that your client has any right to remove the GP and your actions in that regard are illegal, unauthorized, ultra vires and an intentional interference in the contract rights of the GPs.  Further you and Hunt are liable for the GPs attorney fees incurred in response to your illegal attempt to remove the GP without the authority to do so.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com


On Sun, Nov 9, 2014 at 1:47 AM, Harold Berk <haroldberk@gmail.com> wrote:
The referenced documents.
In the absence of GP consent, Hunt's entity is a mere assignee.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com


On Sun, Nov 9, 2014 at 1:43 AM, Harold Berk <haroldberk@gmail.com> wrote:

Mr. Griffith:

I have reviewed certain records concerning the instant limited partnerships and your various notices. However, from the documents I have seen your client does  not appear to have any authority in this matter or if it does have any authority that authority has not been demonstrated.

As you know Hunt bought certain LIHTC assets out of the Capmark Bankruptcy  I am attaching for your reference the sale order and the initial sale order of the Bankruptcy Court with regard to the sale of the LP and other assets.  But the sale of the LP assets often involved various assignments of partnership interests in order for the purchasing entities to obtain actual control as limited partners.  Unless certain actions were taken under the Louisiana RULPA including but not limited to amendment of the partnership agreements at issue, your clients may have only become assignees of the LP interests not actual limited partners entitled to exercise the rights of limited partners under the Partnership Agreement, as amended.

Most importantly in order to complete the process whereby the buyer under the bankruptcy had to have the general partners agree to the admission of the Hunt buyers as true limited partners.  From what I have seen to date your clients are at best assignees without the right to remove the general partner and without the various rights you contend they possess.

So please review your files with your client and produce for me the applicable Limited partnership Agreement as amended whereby your clients became legally authorized to exercise the powers of a full limited partner and not a mere assignee.  I am providing you with correspondence from another transaction involving the Hunt purchase where various amendments and consents were obtained.  Until you prove to the contrary here, your letters

and  notices are null and void and of no effect.

So please produce the post bankruptcy sale amendments of the partnership documents on which you rely to support your client's authority to act as limited partners and not a mere assignee of a limited partner interest. From my experience Hunt was very sloppy about tying up the knots and left themselves exposed and without authority as is the case here until you establish otherwise.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Fri, Nov 7, 2014 at 5:23 PM, Griffith, Steve <sgriffith@bakerdonelson.com> wrote:
Wow -- I had no idea your clothes were lost.  In that case, Monday would be fine.

Thanks,
Steve

**From:** Harold Berk [mailto:haroldberk@gmail.com]
**Sent:** Friday, November 07, 2014 4:22 PM
**To:** Griffith, Steve
**Cc:** Pelleteri, Erin; Juneau, Matt; rrose39963@aol.com; Michael Peralta
**Subject:** Re: Rose Entities -- Follow-Up

As I told your associate partner, I have not had time yet to review the materials.

This week I closed the first ever bank of America permanent loan without an interst rate derivative swap
I represented a client in a hearing in little Rock, AR on Wednesday and then flew to Chicago.
I am dealing with Sun America AIG on 12 partnerships'
I filed a Complaint against Bank of America with the Office of the Comptroller of the Currency of the US.

And five minutes ago the United States Attorney in Miami agreed with me that they had not properly served a Grand Jury subpoena on my accountant client, and the US has to start over.

Now what is it that you are demanding on Friday afternoon after American Airlines-USAir lost my luggage and I just bought some clothes?

as the song goes: Monday, Monday.

I see Hunt selects attorneys from the same mold, and i hope that mold is broken.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Fri, Nov 7, 2014 at 5:12 PM, Griffith, Steve <sgriffith@bakerdonelson.com> wrote:
Harold,

Can you check with your clients and let us know whether you are going to counter our last offer or should we proceed?

Thanks,
Steve


Steven F. Griffith, Jr.
Shareholder
Baker Donelson Bearman Caldwell & Berkowitz, PC
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170
Direct:  504.566.5225
Fax: 504.636.3925
Email:  sgriffith@bakerdonelson.com
www.bakerdonelson.com


Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents
clients across the U.S. and abroad from offices in Alabama, Florida,
Georgia, Louisiana, Mississippi, Tennessee, Texas, and Washington, D.C.



**From:** haroldberk@gmail.com [mailto:haroldberk@gmail.com]
**Sent:** Friday, November 07, 2014 1:56 PM
**To:** Pelleteri, Erin
**Cc:** Griffith, Steve; Juneau, Matt
**Subject:** Re: Rose Entities -- Follow-Up

Not membets?

Harold

Sent from my BlackBerry Z10
**From:** Pelleteri, Erin
**Sent:** Friday, November 7, 2014 2:23 PM

**To:** haroldberk@gmail.com
**Cc:** Griffith, Steve; Juneau, Matt
**Subject:** RE: Rose Entities -- Follow-Up

Harold,

I have not.

**Erin E. Pelleteri**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
201 St. Charles Ave, Suite 3600
New Orleans, LA 70170-3600
Main: 504.566.5200
Direct:  504.566.5287
Cell: 504.723.7668
Fax:  504.636.3987
Email:  epelleteri@bakerdonelson.com
www.bakerdonelson.com

**From:** haroldberk@gmail.com [mailto:haroldberk@gmail.com]
**Sent:** Friday, November 07, 2014 1:18 PM
**To:** Pelleteri, Erin
**Cc:** Griffith, Steve; Juneau, Matt
**Subject:** Re: Rose Entities -- Follow-Up

Did you read my postings this week on the American Bar Association Forum on Affordable Housing re conduct of investment partners and cross default provisions?

Harold R Berk

Sent from my BlackBerry Z10
**From:** Pelleteri, Erin

**Sent:** Friday, November 7, 2014 1:52 PM
**To:** haroldberk@gmail.com
**Cc:** Griffith, Steve; Juneau, Matt
**Subject:** Rose Entities -- Follow-Up

Mr. Berk,

As a follow-up to my last email, I am attaching, for your reference, the notices issued to the General Partners on July 1.

Once you have had a chance to digest the relevant materials, please let us know so we can set up a time to discuss.  If you need anything further, please let me know.

Thanks,
Erin

**Erin E. Pelleteri**
Shareholder
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
201 St. Charles Ave, Suite 3600
New Orleans, LA 70170-3600
Main: 504.566.5200
Direct:  504.566.5287
Cell: 504.723.7668
Fax:  504.636.3987
Email:  epelleteri@bakerdonelson.com
www.bakerdonelson.com

Under requirements imposed by the IRS, we inform you that, if any advice concerning one or more U.S. federal tax issues is contained in this communication (including in any attachments and, if this communication is by email, then in any part of the same series of emails), such advice was not intended or written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another

party any transaction or tax-related matter addressed herein.  This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

♺ : *Please consider the environment before printing this e-mail*

This e-mail, including all information contained therein and any attachments, is intended solely for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not an intended recipient, or an agent responsible for delivering it to an intended recipient, you have received this email in error. In such event, please immediately (i) notify the sender by reply email, (ii) do not review, copy, save, forward or print this email or any of its attachments, and (iii) delete and/or destroy this email and its attachments and all copies thereof. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, any e-mail sent in error, including all information contained therein and any attachments, by persons or entities other than the intended recipient is prohibited. Please visit our website at www.huntcompanies.com for important information about our privacy policies. For your protection, please do not transmit account information or instructions by e-mail or include account numbers, Social Security numbers, credit card numbers, passwords or other personal information.

<Hunt Sale Agreement.pdf>

Exhibit 12

**From:** Harold Berk <haroldberk@gmail.com>
**Date:** November 14, 2014, 7:01:36 PM CST
**To:** "Griffith, Steve" <sgriffith@bakerdonelson.com>,
"rcheatwood@bakerdonelson.com" <rcheatwood@bakerdonelson.com>, Michael
Peralta <mrperalta@aol.com>, "rrose39963@aol.com" <rrose39963@aol.com>,
Wayne Neveu <WNeveu@foleyjudell.com>, <kcunningham@lhc.la.gov>,
<mglover@bakerdonelson.com>, <scarey@bakerdonelson.com>
**Cc:** "Pelleteri, Erin" <epelleteri@bakerdonelson.com>, "Juneau, Matt"
<mjuneau@bakerdonelson.com>
**Subject: Re: Rose Entities**

I will delete any further emails from Griffith without reading them.
I direct Grifith to never again communicate with me in any fashion.
If anyone from Baker Donelson wants to communicate with me despite the criminal
behavior of Griffith and the fact that you have a total and apparent conflict of
interest with Hunt,  I will do so only with a supervising partner-shareholder.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Fri, Nov 14, 2014 at 6:46 PM, Harold Berk <haroldberk@gmail.com> wrote:
In light of your refusal to provide any documentation, your letter sent by email is
ridiculous and further evidence of your improper and illegal behavior.
My ABA posting does not mention any names as a reading of it makes clear. There
is nothing to delete.

As you should also know, I was involved in the Capmark bankruptcy and I have copies in my system of all of the relevant documents including the bankruptcy court orders and the agreement of sale of the tax credit assets. That agreement includes schedules identifying what "tax credit assets" were acquired by Hunt from the Capmark bankruptcy estate, and for all five lf the Limited partnerships here where you have threatened to remove the Generat partners without any authority to do so, the schedules to the agreement of sale make clear that all Hunt bought were special limited partner interests. Further, if you look at the five limited partnerships here, they do not even provide any rights or duties for the SLPs and they are in fact totally superfluous. The heavy lifting belongs to the Investor Limited Partners who have the right to remove GPs. You then superimpose an Asset Management Agreement and claim it gives your client HCP Pacific Asset Management the right to remove the GPs. I ask to see that document, and you refuse consistently to provide it. I ask you for the resolutions or consents by the members of the ILPs to removal of the GPs where, and you decline or stay silent and do not respond.

So my analysis is based on review of the Sale Agreement in Bankruptcy court and the partnership agreements here. Your claim of authority to remove GPs is based on plain hot air and you refuse to disclose any documentary authority of your client.

Nevertheless while refusing to disclose your authority you demand that my client pay Hunt $750,000 for the LP interests in Ames Garden Estates Limited Partnership.

You are guilty of wire and mail fraud, and you demonstrate it once again by this email.

I will have nothing further to do with you as you are in clear and apparent conflict with Hunt, and you have no valid authority to represent their interests in light of your criminal wire and mail fraud in claiming authority to remove the GPs which your client does not have and you will not disclose while demanding $750,000 to leave my clients alone for the Ames partnership.

Please notice the outside and inside General Counsels of LHFA are included on this email.
Perhaps they would like to ask you for the authority to remove the GPs that you will not provide to me.

In light of your behavior, I will have nothing further to do with you or your firm, and Hunt needs to hire new counsel not involved in your criminal enterprise.

Harold R. Berk, Esquire
1041 Glendevon Drive
Ambler, PA 19002-1855
215-646-3434
215-219-0547  mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

On Fri, Nov 14, 2014 at 6:25 PM, Griffith, Steve <sgriffith@bakerdonelson.com> wrote:
Harold,

Please see the attached letter.

Thanks,
Steve


Steven F. Griffith, Jr.
Shareholder
Baker Donelson Bearman Caldwell & Berkowitz, PC
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170
Direct:  504.566.5225
Fax: 504.636.3925
Email:  sgriffith@bakerdonelson.com
www.bakerdonelson.com


Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents
clients across the U.S. and abroad from offices in Alabama, Florida,
Georgia, Louisiana, Mississippi, Tennessee, Texas, and Washington, D.C.

---

Under requirements imposed by the IRS, we inform you that, if any advice concerning one or more U.S. federal tax issues is contained in this communication (including in any attachments and, if this communication is by email, then in any part of the same series of emails), such advice was not intended or written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

---

**P** : *Please consider the environment before printing this e-mail*

This e-mail, including all information contained therein and any attachments, is intended solely for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not an intended recipient, or an agent responsible for delivering it to an intended recipient, you have received this email in error. In such event, please immediately (i) notify the sender by reply email, (ii) do not review, copy, save, forward or print this email or any of its attachments, and (iii) delete and/or destroy this email and its attachments and all copies thereof. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, any e-mail sent in error, including all information contained therein and any attachments, by persons or entities other than the intended recipient is prohibited. Please visit our website at www.huntcompanies.com for important information about our privacy policies. For your protection, please do not transmit account information or instructions by e-mail or include account numbers, Social Security numbers, credit card numbers, passwords or other personal information.