UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HUNT CAPITAL PARTNERS, L.L.C. and<br>HCP PACIFIC ASSET MANAGEMENT, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 14-2726 |
| HAROLD R. BERK, and<br>HAROLD R. BERK, P.C. | SECTION "N" |

## ORDER AND REASONS

Presently before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 17). Having considered the parties' submissions, the record in this matter, and applicable law, **IT IS ORDERED** that the motion to dismiss is **DENIED** as to Defendants Harold R. Berk and Harold R. Berk, P.C.[1]

---

[1] Plaintiffs Hunt Capital Partners, L.L.C. and HCP Pacific Asset Management, L.L.C. aver that Harold R. Berk, P.C. ("Berk, P.C."), a professional corporation incorporated in Pennsylvania, is a proper defendant because defendant-attorney Berk does business, practices law, and represents clients through Berk, P.C. See Complaint (Rec. Doc. 1, ¶6. Disagreeing, Defendants contend that Berk, P.C., of which Berk is the sole shareholder and officer, has been inactive since January 1, 2010, and that Berk has not practiced law under Berk, P.C. since that date. See Defendants' Memorandum (Rec. Doc. 17-1, p.2). Plaintiffs, however, maintain that reasons exist to believe that Defendants' assertions regarding the status of Berk, P.C. are false. See Plaintiffs' Opposition ("Opp.") (Rec. Doc. 19, p.1 n.1.) On the limited showing made, it is not evident to the Court that Berk, P.C. is sufficiently inactive and uninvolved in Berk's legal practices such that Berk, P.C. is properly dismissed from this action on these grounds. Accordingly, at this stage of the litigation, the Court's ruling on the instant motion applies to both defendants.

**Background**

In November 2014, non-resident defendant Harold R. Berk ("Berk"), a Pennsylvania attorney,[2] was retained by the Louisiana-based general partners (the "General Partners")[3] of five Louisiana limited partnerships (the "Partnerships")[4] in connection with a business dispute between the General Partners, certain individual representatives of the General Partners, and the former management company of the Partnerships on one hand, and the limited partners (collectively, "Amtax")[5] of the Partnerships, and Plaintiffs Hunt Capital Partners, L.L.C. and HCP Pacific Asset Management, L.L.C. (collectively, "Hunt" or "Plaintiffs"), [6] on the other hand.[7] That dispute

---

[2] Harold R. Berk ("Berk") is a citizen of Pennsylvania, and a member of the Pennsylvania Bar. He reportedly both lives and works in Pennsylvania. See Defendants' Motion to Dismiss (Rec. Doc. 17, p. 1); Complaint (Rec. Doc. 1, ¶1).

[3] The General Partners are five Louisiana entities – Robin Homes, L.L.C., Smith Square L.L.C., Canary Homes, L.L.C., Warren Homes, L.L.C., and Hnasko Holding Company, Inc. See Complaint (Rec. Doc. 1, ¶7). All of the members of the limited liability companies are Louisiana citizens. *Id.*

[4] The Partnerships – Ames Gardens Estates Limited Partnership, Canary Homes, L.P., Hnasko Affordable Homes, ALPIC, Robin Homes, L.P. and Smith Square Development Limited Partnership – also are Louisiana entities. Each of the Partnerships own and manage multi-family housing in Louisiana. See Complaint (Rec. Doc. 1, ¶5).

[5] "Amtax" refers to AMTAX Holdings 2001-VV, L.L.C., AMTAX Holdings 248, L.L.C., AMTAX Holdings 2001-UU, L.L.C., AMTAX Holdings 249, L.L.C., and AMTAX Holdings 250, L.L.C., which the Court understands to be Ohio limited liability companies. See Amtax Complaint (Civ. Action No. 14-2652, numbered ¶1).

[6] According to the complaint, Plaintiffs are affiliates of Hunt Companies, Inc., and are incorporated in the state of Delaware, but have principal places of business in Denver, Colorado. Hunt Companies, Inc., is a privately held diversified investment, real estate investment management, real estate development, design-build, construction management, and asset/property management holding company. See Complaint (Rec. Doc. 1, ¶4). Plaintiffs' opposition memorandum explains that Plaintiff HCP Pacific Asset Management, L.L.C. is the asset manager designated by Amtax, relative to the Partnerships, whereas Plaintiff Hunt Capital Partners, L.L.C. is the manager of the parent company of HCP Pacific Asset Management, L.L.C., and the ultimate manager of the investment fund comprising Amtax. See Plaintiffs' Opp. (Rec. Doc. 19, p. 4); Complaint (Rec. Doc.

resulted in the commencement of related litigation in this Court, i.e., the "Amtax suit" presently pending before the undersigned.[8]

In the instant action, Plaintiffs have sued Defendants Berk and Harold R. Berk, P.C. ("Berk, P.C.") for defamation. Their claims rest on a series of alleged statements, accusing Plaintiffs of engaging in criminal conduct and violating federal law, that purportedly were made by Berk in connection with the Amtax suit.[9] More specifically, Plaintiffs contend that Berk published these false allegations to their professional community, utilizing the online ABA Forum on Affordable Housing and Community Development Law, along with a barrage of unsolicited emails sent directly to Plaintiffs' third-party lenders, auditors, accountants, attorneys, and other professionals with ties to Plaintiffs and their Low-Income Housing Tax Credit ("LIHTC") business. The recipients of these emails are also alleged to include the United States Attorney for the Eastern District of Louisiana and the Louisiana Housing Finance Authority.

According to Plaintiffs, Berk's negative statements were not made in connection with a good faith negotiation of any disputes between his clients (the General Partners) and Plaintiffs. Rather, Plaintiffs maintain that Berk broadly published these defamatory *per se* statements to

---

1, ¶4).

[7]    See Complaint, Rec. Doc. 1, ¶¶ 1, 2, and 5.

[8]    See *Amtax Holdings 2001-VV, L.L.C., et al. v. Warren Homes, L.L.C., et al.*, No. 14-2652, Section "N" (E.D. La.) (hereinafter, the "Amtax case" or "Amtax suit"). The Court's record in that matter reflects that Hunt Capital Partners, L.L.C., and Hunt Companies, Inc., have been sued as a counter-defendants in the Amtax suit based on actions taken by them on behalf of Amtax. See Amtax Counterclaim (Civ. Action No. 14-2652, Rec. Doc. 26, ¶5).

[9]    Given that Plaintiffs' claim arises from statements made by Berk, and the Court is not aware that Berk, P.C. is alleged to have acted through any natural person other than Berk, the majority of the Court's discussion will refer only to Berk rather than to Berk and co-defendant Berk, P.C. When used herein, however, "Defendants" refers to both Berk and Berk, P.C.

Plaintiffs' professional contacts, knowing full well of their falsity, with the specific hope and intent of publicly shaming, embarrassing, and harassing Plaintiffs into dropping their dispute with Berk's clients, or at least settling the Amtax suit on terms more favorable to Berk's clients.  As result, Berk is alleged to have unfairly impugned Plaintiffs' reputation for lawful business conduct and integrity to professionals in the LIHTC business, thereby injuring Hunt's reputation, goodwill, and business in Louisiana and elsewhere.  Plaintiffs finally aver that they have been further damaged in having to expend substantial resources to respond to Berk's false statements.

   Arguing that neither Berk nor Berk, P.C. has sufficient minimum contacts with Louisiana for personal jurisdiction to be properly exercised in this forum relative to them, Defendants' instant motion seeks dismissal of Plaintiffs' defamation claim.  In support of this position, Berk asserts that he does not have, and never has had, an office in Louisiana, that he has physically been in Louisiana only two times for professional seminars unrelated to the underlying case, and that he has never otherwise been to Louisiana for business purposes.  And, as previously stated, Berk additionally maintains that his professional corporation is inactive and has no involvement with the Amtax suit.

   Opposing Defendants' motion, Plaintiffs argue that Defendants have sufficient minimum contacts with this Louisiana such that Berk could have reasonably expected to be haled into a Louisiana court, and that this Court's exercise of personal jurisdiction over Defendants would be be neither unfair nor unreasonable.  Specifically, given Berk's legal representation of parties to the Amtax suit, thereby profiting from doing business in Louisiana and, moreover, because Berk's alleged defamatory unlawful conduct arose from that representation, Plaintiffs contend that personal jurisdiction is properly exercised relative to Defendants.  Plaintiffs additionally argue that Berk caused them harm in the forum state, where Plaintiffs have significant business interests, by

directing the allegedly defamatory statements into Louisiana, via the aforementioned ABA Listserv, and by sending "false and defamatory accusations" against Plaintiffs to the United States Attorney for the Eastern District of Louisiana and the Louisiana Housing Finance Authority. Furthermore, these actions allegedly were taken in hopes that they would negatively impact Plaintiffs' position relative to the Amtax suit.  Finally, Plaintiffs argue that by virtue of  Berk's emails with the Court in the Amtax suit,[10] and his telephonic appearance (in the Amtax suit) before the Court on November 20, 2014, he has voluntarily submitted himself to this Court's jurisdiction.

       Responding to Plaintiffs arguments regarding the Amtax suit, Berk contends that he was not, in fact, retained to litigate in Louisiana, but only to negotiate a settlement of the dispute. In support of that assertion, Berk emphasizes that he is not counsel of record in the Amtax suit, has "never entered an appearance" therein, and has not filed a motion to participate *pro hac vice*. Rather, Berk states that his role in the Amtax suit is merely as a "consultant" to defense counsel of record.

       Defendants further add that Berk's only arguable appearance before this Court was his participation from Chicago, via telephone, in a conference in the Amtax suit.  And, although Berk acknowledges emailing with Judge Shushan in the Amtax suit, he disagrees that such communications constitute voluntary participation in Louisiana litigation sufficient to establish personal jurisdiction in the separate, though related, instant action. Berk likewise confirms that he signed a protective order in the Amtax suit, but maintains that he did so only "as a consultant" and only because defense counsel of record therein wanted him to have access to the protected records so as to be able to advise them thereon.  Thus, Defendants argue that Berk's having signed the

---

[10]    Plaintiffs specifically reference Berk's email to Magistrate Judge Shushan in the Amtax suit and Berk's signing the protective order entered therein.  See Opp. (Rec. Doc. 19, p.17).

protective order should not subject Defendants to personal jurisdiction in the instant matter.

Defendants also emphasize that all of Berk's letters, e-mails, and phone calls to opposing (Louisiana) counsel originated from locations outside Louisiana. They further argue that the defamatory emails allegedly published by Berk, by means of the ABA Listserv, cannot give rise to personal jurisdiction because those communications were not targeted to Louisiana, did not specifically identify Plaintiffs, or refer to Louisiana, and were sent from Berk's office in Pennsylvania via a website maintained in Chicago and controlled in Boston.

## Law and Analysis

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). Louisiana's long-arm statute "extends personal jurisdiction of courts sitting in Louisiana, including federal courts, to the limits permitted under the due process clause." See La. Rev. Stat. § 13:3201(B); *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 624 (5th Cir. 1999).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgment of a forum with which the individual has established no meaningful 'contacts, ties, or relations.'" *Dickson Marine, Inc. v. Panalpina, Inc*., 179 F.3d 331, 336 (5th Cir.1999) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154 (1945))). Thus, "[t]o comport with due process, defendant's connection with the forum state must be such that he 'should reasonably anticipate being haled into court'" in that state. *Latshaw*, 167 F.3d at 211.

The Fifth Circuit has articulated a three-part test to determine whether the exercise

of personal jurisdiction against a non-resident defendant who has not consented to suit in the forum state is consistent with due process: "(1) whether the defendant has minimum contacts with the forum state[]; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). When a nonresident defendant challenges personal jurisdiction, the party seeking to invoke the Court's power bears the burden of proving that jurisdiction exists. *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). A plaintiff is not required to establish jurisdiction by a preponderance of the evidence; a prima facie showing will suffice. *Id*. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and factual disputes are to be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir.1990). Once a plaintiff establishes a prima facie case, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would offend traditional notices of fair play and substantial justice and, thus, is legally unreasonable. *Id.* at 474.

A nonresident defendant's contacts with the forum state may give rise to either "specific" jurisdiction or "general" jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8-9 (1984). In other words, "[t]he 'minimum contacts' prong of the [] test may be further subdivided into contacts that give rise to 'general' personal jurisdiction and 'specific' personal jurisdiction." *Choice Healthcare, Inc. v. Kaiser Foundation Health,* 615 F.3d 364, 368 (5th Cir. 2010).

Specific jurisdiction exists where a plaintiff's cause of action arises from, or is related to, the nonresident defendant's minimum contacts in the forum state. *Helicopteros,* 466 U.S. at 414 n.8; *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). In the context of specific jurisdiction, minimum contacts exist where a defendant has purposely directed its activities toward

7

the forum state or purposely availed itself of the privileges of conducting activities there. *Choice Healthcare, Inc.*, 615 F.3d 368. The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another person or third party. *Id.* at 369 (citing *Burger King Corp.*, 471 U.S. at 475).

General jurisdiction is present where a defendant has "continuous and systematic" contacts with the forum state, such that personal jurisdiction is appropriately exercised as to any action brought against that defendant regardless of the relation, if any, of plaintiff's cause of action to those activities. *Helicopteros*, 466 U.S. at 415; *Choice Healthcare, Inc.,* 615 F.3d at 368. To be "continuous and systematic", however, a defendant's contacts with the forum must be substantial and "of a more extensive quality and nature between the forum state and the defendant than those needed for specific jurisdiction." *Choice Healthcare, Inc.,* 615 F.3d at 368. Similarly "'random," fortuitous, or attenuated contacts are not sufficient" to establish general jurisdiction. *Id.*

The instant jurisdictional challenge concerns allegedly defamatory statements about nonresident plaintiffs made by a Philadelphia defendant-attorney for the benefit of Louisiana clients. A decision by an out-of-state attorney to represent a client in another forum does not automatically confer personal jurisdiction if "the claim does not arise from the lawyer's contacts with the forum." *Wien Air*, 195 F.3d at 213.[11] Similarly, communications with the forum, standing alone, are not sufficient to establish personal jurisdiction where the communications do not give rise to the cause of action. *Id.* Whether or not an out-of-state attorney has been physically present in the forum, however, is not determinative of the existence of minimum contacts. *Burger King v. Rudzewicz,* 471

---

[11] See also *Trinity Indus. Inc., v. Myers & Assocs.*, 41 F.3d 229, 231 (5th Cir. 1995) ("The bare existence of an attorney-client relationship is not sufficient.").

8

U.S. 462, 476 (1985).[12]

Rather, as stated above, due process permits the assertion of jurisdiction where an out-of-state defendant directs a single purposeful act toward the forum state that gives rise to the asserted cause of action. *Wien Air*, 195 F.3d at 211 (citing *Calder v. Jones*, 465 U.S. 783 (1984) and *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir.1993));  see also *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1172 (5th Cir. 1985). Thus, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment" of "'the privilege of causing a consequence'" in the forum state. *Wien Air*, 195 F.3d at 213.

Further, "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry*, 188 F.3d at 628; *see also  Carlisle v. Sotirin*, No. 04-1549, 2005 WL 78938, at *4 (E.D. La. Jan. 11, 2005) (Africk, J.) (specific personal jurisdiction existed  relative to out-of-state defendants who made allegedly defamatory statements while outside of the forum state because the "effects of the defamation were aimed at a resident of the forum state and felt within the forum").

As previously stated, the personal jurisdiction due process inquiry does not end with the establishment of minimum contacts or a determination of the relation the plaintiff's cause of action bears to those contacts. Rather, "[o]nce a plaintiff establishes minimum contacts between the

---

[12] See also *Diamond Mortgage Corp. v. Sugar,* 913 F.2d 1233 (7th Cir. 1990) ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.").

defendant and the forum state, the burden of proof shifts to the defendant to make out a "compelling case" that the assertion of jurisdiction is unfair and unreasonable." *Nuovo Pignone, SpA,* 310 F.3d at 382. Five factors guide this inquiry: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Id.* With respect to the fifth factor, the Fifth Circuit has noted that "all states have an interest in predictability of jurisdiction, in a legal system that allows the citizens of those states to structure their transactions to limit their amenability to suits in foreign states." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 377 (5th Cir. 1987); *Schlesinger v. ES & H, Inc.,* No. 11-294, 2011 WL 3819585 (E.D. La. Aug. 29, 2011) (Lemelle, J.) (quoting *Bearry*).

Applying the foregoing principles to the instant action, the Court concludes Defendants' motion to dismiss for lack of personal jurisdiction should be denied. At a minimum, the Court finds Plaintiffs' claims that Berk made defamatory communications[13] about Plaintiffs to the United States Attorney for the Eastern District of Louisiana, and the Louisiana Housing Finance Authority, sufficiently allege that Berk purposefully availed himself of the privilege of causing a

---

[13] Under Louisiana law, the requisite elements of a defamation claim are: (1) a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Bellard v. Gautreaux*, 675 F.3d 454, 464 (5th Cir. 2012) (citing *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004)). Defamatory words are "words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." *Costello*, 864 So.3d at 140. Given the nature of the instant motion, the parties' submission understandably do not address the merits of Plaintiffs' claims.

10

consequence in the forum state.[14]

Furthermore, although urged by non-resident plaintiffs, and attributed to a non-resident defendant-attorney, at least certain of the statements at issue allegedly were intended to benefit Berk's Louisiana clients, while disadvantaging Plaintiffs and Amtax, relative to a dispute pending between them in Louisiana concerning the proper management of the (Louisiana) Partnerships and the low-income multi-family residential properties operated by the Partnerships in Louisiana. The same statements are also alleged to have negatively impacted Plaintiffs' reputation in Louisiana vis-a-vis participation in the Low-Income Housing Tax Credit business. As such, in the present context, the Court finds the conduct at issue, even if accomplished outside of Louisiana by means of modern technology, allegedly yields seriously harmful consequences or effects within the forum state that were either intended or highly likely to follow from the nonresident defendant-attorney's conduct. Such conduct is sufficient to establish jurisdictional minimum contacts relative to intentional tort claims premised on that conduct.

In addition to the authorities previously cited, the Court finds *Bona Fide Demolition & Recovery, L.L.C. v. Crosby Construction Co., of La., Inc.,* No. 07-3115, 2010 WL 1936208 (E.D. La. May 13, 2010) (Vance, J.), provides additional support for its determination. In *Bona Fide,* a defendant-attorney, sued for malpractice, was held to have "had minimum contacts with Louisiana sufficient to support the exercise of personal jurisdiction over him." *Id.* at *2 (E.D. La. May 13, 2010) (Vance, J.). Significantly, the attorney-client relationship from which the plaintiff's claim

---

[14] It is the Court's understanding that the Louisiana Housing Finance Authority is charged with issuing the low-income tax credits offered to the Partnerships (as to which Plaintiffs are alleged to act on behalf of Amtax) involved in the Amtax suit and are an integral component of Plaintffs' LIHTC business. See Amtax Complaint (Civ. Action No. 14-2652, Rec. Doc. 1, ¶21); see also Complaint (Rec. Doc. 1, ¶¶1-4).

11

arose was formed outside of Louisiana and the defendant-attorney never visited Louisiana during the course of the representation. *Id*. Furthermore, the defendant-attorney did not enroll *pro hac vice,* was never listed as a counsel of record in the underlying litigation, and local Louisiana counsel was retained to serve as counsel of record. *Id*. Noting that the defendant-attorney was hired to protect investments in Louisiana companies, and knew that his work was focused in Louisiana, Chief Judge Vance found personal jurisdiction to exist. *Id*. at *2. In so concluding, she emphasized that physical presence in the forum state "is not determinative of minimum contacts," and that "due process permits the assertion of jurisdiction when an out-of-state defendant directs a single act toward the forum state that gives rise to the asserted cause of action." *Id.*

Like the defendant-attorney in *Bona Fide*, Berk never visited Louisiana during the course of his participation in the Amtax suit, was never listed as counsel of record, and his clients eventually retained local counsel. Importantly, however, he was hired to represent general partners of Louisiana-based partnerships in connection with immovable property located in Louisiana, and received payment for that representation. Further, as in *Bona Fide*, Plaintiffs' claims are premised on alleged out-of-state conduct arising from and as a result of that representation that is averred to have caused injury in Louisiana.

Nor are Defendants able to make a compelling case that the Court's assertion of personal jurisdiction in this matter is either unfair or unreasonable. First, the burden of litigating in Louisiana is not unduly heavy for Defendants as Berk already has involved himself in related litigation currently pending in this Court. Second, the forum state, Louisiana, "has a substantial interest in the litigation of claims against foreign defendants who allegedly committed intentional and tortious acts directed at it." *Guidry*, 188 F.3d at 631. Indeed, though Louisiana is neither Plaintiffs' state of incorporation, nor principal place of business, Plaintiffs allegedly conduct a

significant amount of business in Louisiana that impacts the management and economic viability of low-income multi-family housing in Louisiana. Furthermore, in this action, Plaintiffs accuse Berk of conduct intended to improperly influence the outcome of business disputes between Plaintiffs and Berk's clients, regarding purported managerial improprieties occurring relative to certain of those housing endeavors. Given the potential impact on the affordable housing available to its low-income citizens, and that entities offering such housing purportedly receive tax credits from it that are issued by the state, Louisiana undoubtedly has a strong interest in having its courts redress such harms regardless of the residency status of the alleged wrongdoer.

Plaintiffs' interests likewise weigh in favor of jurisdiction because they, the allegedly injured parties, seek to litigate in a forum in which actionable harm purportedly has occurred and in which they already have counsel familiar with both the facts of the instant action and the Amtax suit. Efficient resolution of controversies similarly favors the exercise of jurisdiction given the undersigned's familiarity with the related Amtax suit, which remains pending before the Court, and the possible commonality of questions of law and fact in the two proceedings. Finally, the Court is not convinced that exercising personal jurisdiction over non-resident defendant-attorneys – who choose to involve themselves in related business disputes pending in the forum state and, moreover, allegedly resort to defamatory tactics intended to improve their resident clients' bargaining position relative to those disputes – is adverse to the "shared interests of the several states" regarding the "predictability of jurisdiction" in a "legal system that allows the citizens to structure their transactions to limit amenability to suits in foreign states." *See Bearry*, 818 F.2d at 377.

## **Conclusion**

As stated herein, the Court, on the showing made, finds personal jurisdiction to exist in this action relative to Defendants Harold R. Berk and Harold R. Berk, P.C. Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 17) is **DENIED**.

New Orleans, Louisiana, this 13th day of July 2015.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**